In the United States Bankruptcy Court
for the Southern District of Texas
Houston Division

| | | |
|---|---|---|
| In re: | § | Case No. 18-32417-H5-11 |
| | § | Case No. 18-32494-H5-11 |
| Stephen H. Dernick and | § | |
| David D. Dernick, | § | |
| | § | Jointly Administered under |
| | § | Case No. 18-32417-H5-11 |
| Debtors | § | |

## Debtor David Dernick's Disclosure Statement and Liquidating Chapter 11 Plan of Reorganization

David Dernick ("Dernick" or the "Debtor") proposes this Disclosure Statement and Liquidating Chapter 11 Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. §§ 1121 and 1125. A separate plan is being proposed by Stephen H. Dernick.

## I.   Information Regarding the Debtor

### A.  The Debtor

Dernick is an individual Texas resident residing at 6014 Pebble Beach Drive, Houston, Texas 77069 (the "Homestead"). Where appropriate, references to the Debtor shall mean the reorganized debtor.

### B.  Brief History of the Debtor and Cause of the Debtor's Chapter 11 Filing

Dernick and his brother, Stephen Dernick, have been partners in the oil and gas exploration and production business for nearly thirty-seven years. They own interests in and manage companies involved in the acquisition, exploration, development and production of oil and gas properties. Most of their companies and ventures have been successful and profitable. Since the formation of Dernick Encore, LLC ("Encore") in 2010, their primary focus has been in oil

producing properties in the Permian Basin in Texas.

Encore was an oil and gas exploration and production company.  Two out of three of Encore's properties were located in the Permian Basin.  The other property was located in Kansas. All three properties were successful and profitable, as was Encore.

Dernick and his brother, Stephen Dernick, each own interests in Dernick Land, LLC ("D-Land"), an oil and gas exploration and production company which was the former managing member of Encore.  The current managing member of Encore is NorthStar Gas Ventures, LLC ("NorthStar").  Until January 2016, D-Land owned 35% of Encore.  Dernick owned a 28.69% interest and Stephen Dernick owned a 35.617% interest in D-Land through January 5, 2016.  After January 5, 2016, Dernick owned a 44.615% and Stephen Dernick owned a 55.385% interest.  In addition, Dernick and his brother were officers of Encore.

When the Dernicks formed Encore in 2010, they invited NorthStar and the Russell Family Partnership LLP ("Russell") to participate in Encore as investors. The owners of NorthStar and Russell were "deep pocketed" investors who held other investments across other non-energy related industries.  Neither NorthStar nor Russell were energy companies.

Encore's mission was for the Dernick brothers and their expert staff to generate and manage oil and gas opportunities for Encore while NorthStar and Russell would be capital providers.  As an exit strategy, properties would be periodically monetized by the sale of properties for cash and/or Encore would be sold for cash or merged into a publicly traded company.

At inception, Dernick proposed that D-Land be compensated with a traditional "carried interest" waterfall promotion. NorthStar, however, instead insisted that the promotional compensation be in the form of a low interest rate loan to be used by D-Land to capitalize its share of Encore.  Dernick and his brother initially borrowed $2.5 million from each of Russell and

NorthStar for a total $5.0 million, all of which they contributed to D-Land.  D-Land, in turn, contributed the same amount to Encore as D-Land's initial capital contribution to Encore.  The notes had a three-year term, maturing in 2013.  Encore's initial capital contributions were used for general and administrative expenses and for the initial investment in the three properties.

In 2011, Encore Alliance LLC ("Alliance"), a working interest owner in all three of Encore's properties, rolled all its three working interests into Encore in return for an ownership interest in Encore. At that time, Alliance loaned $2.1 million to the Dernicks, all of which was in turn infused into D-Land and then into Encore as an additional capital contribution to avoid the dilution of D-Land's percentage interest in Encore.

Encore was very successful from the outset.  Very quickly, revenues were sufficient to pay general and administrative expenses and a portion of capital expenditures for the drilling and equipping of new wells.  The Dernicks together ultimately borrowed a total of $12.188 million from the three capital partners for D-Land's capital contributions to Encore.  The breakdown of the $12.188 million borrowed was $2.5 million from NorthStar, $7.588 million from Russell, and $2.1 million from Alliance (in aggregate, the "Payees").

Because of Encore's significant success, the Dernicks anticipated that the three lenders would agree to extend the maturity date for the promissory notes until Encore monetized all or a portion of its properties.  When Encore monetized its properties, then the Dernicks would have sufficient cash for D-Land and the Dernicks to completely pay the notes.  However, in April 2013, the Payees would only agree to amended and revised promissory notes which provided for a high interest rate of 18% and a January 5, 2016 maturity date ("Revised Notes").

The Revised Notes provided that "Absent an election by Payee to have less than its entire outstanding balance due converted immediately following the Maturity Date, any outstanding

principal and interest due shall be automatically converted into additional Member Interests in Dernick Encore to be transferred out of Dernick Land's ownership interest…"

No elections were made by the Payees prior to the maturity date of the notes, so on January 6, 2016, the entire debt converted into D-Land's 35% ownership in Encore. Dernick believed that this conversion fully satisfied his obligations under the Revised Notes.

Approximately fifteen (15) months later, Dernick learned in April 2017 that Russell and NorthStar disagreed. In April 2017, Russell and NorthStar separately sued Dernick in federal district court in the Southern District of Texas.[1] Russell's suit was assigned to Judge Melinda Harmon's court while NorthStar's suit was assigned to Judge David Hittner's court.

Judge Hittner ordered discovery to be completed by February 28, 2018, which occurred. During this discovery, Dernick's expert witness, Stout Risius Ross, issued its expert report prepared in February 2018 that valued the Encore units ("Encore Units") owned by D-Land at $23.4 million effective January 5, 2016, the maturity date of the Revised Notes. On that same date, the two Dernick brothers owed NorthStar approximately $4.4 million in principal and interest, Russell approximately $13.0 million in principal and interest, and Alliance $3.7 million in principal and interest. The total amounts owed by the Dernicks were approximately $21.1 million in principal and interest. The value of the Encore Units of approximately $23.4 million exceeded the total amounts owed by the Dernicks to the Payees. Russell's and NorthStar's lawsuits allege that the same Encore Units had a *zero value*.

Discovery in Judge Harmon's court was suspended awaiting her ruling on a summary judgment motion filed by Russell. On March 7, 2018, Judge Harmon ordered the two cases

---

[1]    Case Nos. 4:17-cv-01230 and 4:17-cv-01266.

combined into her court.  On March 31, 2018, she issued her summary judgment in favor of the plaintiffs.[2]  The judgment ("Judgment" or "Judgments" in reference to both defendants) awarded Russell and NorthStar the entire original principal amount borrowed plus accrued interest, for total $26.8 million.  *No credit or value was given to the Encore Units.*  Russell and NorthStar retained the Encore Units which Stout Risius Ross valued at $23.4 million effective January 5, 2016, the date that all debt converted into D-Land's Encore units.

In other words, NorthStar and Russell received and retained the Encore Units valued at $23.4 million in January 2016 *plus* were awarded the judgment of $26.8 million for a combined amount of $50.2 million.  The total amount that NorthStar and Russell will receive under the current status of the Judgment of amounts in excess of $50.2 million originates from an original $2.5 million loan from NorthStar and an original $7.588 million loan from Russell (in aggregate total amount of $10.088 million).

Further, there was no allowance for the fact that the Encore Units were also pledged to Alliance which had not yet filed a lawsuit.  Alliance originally loaned the two Dernicks $2.1 million.  Alliance filed its own lawsuit against the Dernicks on May 3, 2018, in the 125th District Court in Harris County, Texas.

Dernick and his brother will be appealing the Judgments against them by NorthStar and Russell.

After the Judgments were entered on March 31, NorthStar almost immediately pursued collection from Dernick of the Judgment. NorthStar obtained writs of garnishment on April 24 and 25 and served them on Dernick's banks. This action left Dernick almost without funds even for

---

[2] Judge Harmon retired as a federal judge on or about March 31, 2018, the day that she ruled on her Summary Judgment. The case has been assigned to Judge Andrew Hanen.

living expenses. Dernick filed this bankruptcy case on May 9, 2018 due, in part, to the collection actions being taken against him while he appeals the Judgments.

### C.  Assets of the Debtor

Dernick's principal assets are his interests in oil and gas companies. In particular, he owns approximately a 1.9% interest in Riley Exploration Permian, LLC ("Riley LLC"), which he values at approximately $6.8 million and which is expected to become publicly traded on the New York Stock Exchange. On September 19, 2018, Riley Exploration Permian Inc. ("Riley Inc.") filed its S-1 with the SEC to be listed on the New York Stock Exchange with an initial public offering of $115,000,000, and for the conversion of Riley LLC into Riley Inc.  This action will result in Dernick's Riley LLC interest being converted into publicly traded common stock in Riley Inc. Dernick expects that he will be restricted from trading such shares for 180 days pursuant to a standard Lock-Up Agreement.  Also, this public offering triggers the payment of monies owed by Dernick Encore to D-Land and in turn to Dernick.

Dernick also intends to pursue a fraudulent transfer claim on the Encore Units.  Dernick had pledged the Encore Units as collateral for the loans from Russell, NorthStar and Alliance.  The Encore Units were to be transferred to Russell, NorthStar, and Alliance.  The Encore Units were given a zero value for the transfer.  Dernick believes that the Encore Units (for both himself and his brother, Stephen) had a value of over $23.4 million when transferred.  Dernick contends that the Encore Units should be returned to himself and his brother Stephen as a fraudulent transfer. Dernick intends to pursue such claim in this case.  Dernick also contends that the return to him and his brother of the Encore Units will provide more than sufficient funds to pay all creditors in full, notwithstanding the results of the appeal of the Judgment against him and his brother.

In addition, Dernick Encore owes D-Land approximately $2.76 million for deferred management fees, working capital loans and the unreimbursed out-of-pocket expenses that D-Land incurred on behalf of Encore.  The Dernick's advanced funds to D-Land when Russell and NorthStar refused to provide the working capital that was to also be provided by these other equity partners.

With respect to non-business assets, Dernick has owns vehicles, artwork, books, and jewelry. As of the date of the filing of this disclosure statement, he also has approximately $279,490 in personal funds and funds held in trust for him in various bank accounts. Approximately $262,856 of this amount is currently suspended as a result of the garnishment actions taken against him by NorthStar. Otherwise, Dernick has miscellaneous household and personal items as more fully set forth on his schedules of assets filed with the bankruptcy court. Dernick will be amending his exemptions in the near future.

For additional detailed information regarding Dernick's assets, please see his bankruptcy schedules filed with the Court.

### D.  Source of the Information Contained in This Disclosure Statement

Unless otherwise indicated, Dernick has submitted all of the information contained in this Plan and Disclosure Statement.

### E.  Present Condition and Post-Petition Operations of the Debtor

Dernick is currently able to fund his living expenses with payments from D-Land, draws from the David D. Dernick Trust, and dividends from his shares of Wimmer Petroleum Corporation.  Further, he hopes to supplement his income with consulting fees. D-Land also currently provides Dernick with medical and dental insurance under D-Land's insurance policies.

Since virtually all of Dernick's debt is attributable to the Judgments, Dernick's post-petition operations have focused on appealing the Judgments. Though no appeal has yet been filed because the Judgments are not yet final, Dernick and his brother have hired Marc Tabolsky and Schiffer Hicks Johnson PLLC as special counsel to represent them in the appeal.[3]

Dernick's post-petition financial operations are set forth in the monthly operating reports filed with the Bankruptcy Court. Attached as Exhibit A are his two most recent monthly operating reports, setting forth his cumulative post-petition operations.

### F. Anticipated Future of the Debtor and Feasibility

Except for the unexpected Russell and NorthStar Judgments, Dernick's business activities in oil and gas have been profitable. For this reason, Dernick does not anticipate any major changes to his business practices. Dernick believes that he will successfully appeal the Judgment, in which case, Dernick has a significant unencumbered net worth in excess of his remaining debt along with the profit from his business activities.  If the appeal is successful and the fraudulent transfer actions are successful, he can easily pay his remaining debt. If Dernick does not successfully appeal the Judgments, then creditors will be paid his non-exempt assets from the D Dernick Trust,[4] as described herein.  Dernick intends on obtaining employment in the near future in the oil and gas business and his income from such employment will be used to pay his personal living expenses. The employment income will not be paid to or contributed to the D. Dernick Trust.

Dernick's income and expenses, together with the projections of income and expenses for the next three years, are attached as Exhibit B to this Plan and Disclosure Statement.

---

[3]   Doc. Nos. 34 and 71.
[4]   The D Dernick Trust is a different trust from the David Dwight Dernick Trust established in his mother's will. The D Dernick Trust is the liquidating trust established in this plan.

### G.  Claims Summary

Dernick's bankruptcy schedules reflect claims against him and their respective priorities. The bar date for filing claims was September 26, 2018. The following table summarizes the claims currently filed against Dernick:

| Claim # | Creditor | Amount | Status | Collateral |
|---|---|---|---|---|
| 1 | Ally Financial | $358,852.29 | Secured | RV Motor home |
| 2 | Ford Motor Credit Company | $22,162.32 | Secured | Vehicle |
| 3 | Harris County | $4,080.40 | Secured | Homestead |
| 4 | Cypress Fairbanks Independent School District | $5,480.64 | Secured | Homestead |
| 5 | Discover Bank | $ 8,254.93 | General Unsecured | - |
| 6 | American Express | $768.04 | General Unsecured | |
| 7 | Wells Fargo Bank NA as Trustee | $314,972.88 | Secured | Homestead |
| 8 | Internal Revenue Service | $1,518.78 | Priority | |
| 9 | Barry Conge Harris | $261,652.74 | General unsecured | |
| 10 | American Express | $646.55 | General unsecured | |
| 11 | Encore Alliance, LLC | $2,440,852.57 | Unsecured litigation | |
| 12 | NorthStar Gas Ventures, LLC | $3,033.156.20 | Unsecured litigation | |
| 13 | Dernick Encore, LLC | $3,352,836.92 | Unsecured litigation | |

| 14 | David H. Russell Family Limited Partnership, LLLP | 9,218,762.35 | Unsecured litigation | |
|----|------|------|------|---|

The claims listed in the schedules that are not disputed, contingent or unliquidated are as follows:

| Creditor | Amounts | Collateral |
|----------|---------|------------|
| AAA Insurance Company | $338 | None |
| Bank of America | $3,103.49 | None |
| Chase Card Services | $492.42 | None |
| Paypal Mastercard | $7,514.12 | None |
| Stout Risius Ross | $36,000 | None |

If Dernick has classified a claim on his bankruptcy schedules as disputed, unliquidated, or contingent, then the creditor must file a proof of claim. If Dernick classified a claim on Schedule F as disputed, unliquidated, or contingent and if the creditor has filed no proof of claim by the applicable bar date, then Dernick will not pay any amount on the claim.

The following table sets forth the secured and priority claims that Dernick listed in his bankruptcy schedules as undisputed for which proofs of claim have not been filed. Dernick has also scheduled undisputed general unsecured claims which can be viewed on Schedule E/F.

| Creditor | Amount | Status | Collateral |
|----------|--------|--------|------------|
| None | | | |

Copies of Schedules D (secured creditors) and E/F (priority and general unsecured creditors) are available from the Clerk of the Court or from Dernick's counsel.

**H.  Liquidation as an Alternative to the Proposed Plan**

The Debtor is proposing a liquidating Chapter 11 Plan of Reorganization to repay his debts. However, if the Plan is not approved by the Creditors and confirmed by the Court, the primary alternative for the Debtor is liquidation under chapter 7 or dismissal of the case.

An estimation as to amounts that might be received by unsecured creditors in this case is highly problematic and difficult due to the uncertainty of an appeal and the fraudulent transfer claims.  In a chapter 7 liquidation, unsecured creditors may likely receive nothing since a chapter 7 trustee may or may not pursue the appeal and/or the fraudulent transfer claims.

The Plan proposes that all creditors—secured, priority, and unsecured—be paid in full to the extent of their filed and allowed claims and to the extent of the liquidated value of the assets, less or net of the litigation expenses and attorneys' fees.  If the case is converted to a chapter 7 case, very little funds, if any, will be available for payment to the unsecured creditors.

Due to the fact that this is a liquidating plan, no liquidation analysis is provided for a chapter 7 case.

Although Dernick's creditors would possibly be paid in full in a chapter 7 liquidation, the Plan will allow Dernick to pursue his legal right to appeal the judgments against him instead of being economically coerced to forgo his appeal rights as to NorthStar and Russell.

Even if Dernick's appeal is unsuccessful, Dernick is likely to obtain greater proceeds from a liquidation of his non-exempt assets through the Plan rather than through a chapter 7 liquidation because he will be able to sell those assets through normal channels rather than a chapter 7 trustee selling assets in a quick, forced sale. In particular, this would allow Dernick to liquidate the Riley interest at an amount closer to its estimated value.

## I.   Estimated Administrative Expenses

Dernick estimates that administrative expenses for this case will be approximately $150,000. Administrative expenses will include attorney fees, other professional fees, pre-confirmation U.S. Trustee quarterly fees, and a reserve for other possible administrative expenses. The appeal and litigation costs are anticipated to be paid equally with his brother, Stephen.

## J.   Avoidance and Contested Claims

Dernick intends to pursue appeals of the Judgments obtained by Russell and NorthStar.

Dernick intends to object to the claim of Dernick Encore as a claim with no basis in fact. Dernick Encore and the Debtor entered into a Mutual Release Agreement dated as of March 6, 2017 (the "Release").  In the Mutual Release, Dernick Encore released the Debtor from any and all claims and causes of action except for certain limited claims set forth in the Release.  Dernick Encore filed a proof of claim for $5,352,836.92.  The filing of the claim has subjected Dernick Encore to the jurisdiction of this Court.  The Release provides that no party to the Release will assert any claim that was released.  Dernick asserts that the claim as asserted does not qualify as a claim that can be made against the Debtor under the Release.  The Debtor believes that the actions of Dernick Land appear to be in bad faith.

Dernick intends to object to the claims of NorthStar and Russell, subject to the appeal.

Dernick intends to pursue the fraudulent transfer claims against NorthStar and Russell involving the Encore Units.

In addition, Dernick believes that the garnishment of NorthStar on Dernick's funds as a result of Judgment is a preferential transfer. Dernick has filed an adversary proceeding in this

bankruptcy case against NorthStar that seeks to avoid this transfer.[5]

At this time, Dernick has not identified any other preferential transfers or claims that should be disputed. Dernick reserves the right to further identify and pursue other claims that may be discovered or determined at a later time.

### K.  Summary of Litigation.

Dernick is involved in the following litigation:

- *David H. Russell Family LTD Partnership LLLP and NorthStar Gas Ventures, LLC v. Stephen H. Dernick and David D. Dernick*, Cause Nos. 4:17-cv-1230 and 4:17-cv-1266 in the United States District Court of the Southern District of Texas. These consolidated cases involve the breach of promissory notes. The court entered judgments against Dernick, but he is currently appealing them.

- *Encore Alliance, LLC v. Stephen H. Dernick and David D. Dernick*, Cause No. 2018-30043 in the District Court of Harris County, Texas, 125th Judicial District. This case involves the breach of promissory notes and is currently pending.

- *David D. Dernick v. NorthStar Gas Ventures, LLC (In re Dernick)*, Adv. No. 18-03152 in the United States Bankruptcy Court of the Southern District of Texas. In this case, Dernick seeks to avoid a preferential transfer.

### L.  Risks Posed to Creditors

The primary risk to creditors is a decline in the value of Dernick's Riley LLC interest, which is currently the bankruptcy estate's most valuable asset and the only non-exempt asset which would contribute substantially toward the payment of Dernick's debts. The other asset of significant value is the Encore Units. The valuable assets of Dernick are his oil and gas interests in Riley LLC and the Encore Units. The primary risk to creditors involves the volatility of the oil and gas business. If the price of oil or gas drops, then the value of the interests in Riley LLC and the Encore Units may decline. However, Riley currently projects that its daily oil production rate

---

[5]     Adversary Proceeding No. 18-03151.

should grow significantly as a result of the investment of the $115 million it is raising pursuant to its IPO for which it filed its S-1 with the SEC on September 19, 2018. If the price of oil or gas rises, then the corresponding values of the Riley LLC and the Encore Units should increase. Dernick cannot predict the future of oil and gas prices. However, historically there is not currently indications that oil and gas prices may decrease materially in the near future, especially during the time that it would take for Dernick to resolve his appeal of the Russell and NorthStar judgments and to liquidate the interest if that ultimately becomes necessary. In fact, Riley has been a rapidly growing company with substantial additional growth projected over the next several years due to increases in its daily production rates and total oil reserves as a result of an ongoing new well drilling plan with low finding and production costs per barrel of oil.

Even if the creditors did have immediate access to the interests in the units of Riley Inc., the probable lock up agreement for the shares would not allow for a sale of the shares of Dernick for 6 months.

## M.    Tax Ramifications

An analysis of the federal income tax consequences of the Plan to creditors requires a review of the Internal Revenue Code of 1986, as amended, the Treasury regulations promulgated thereunder, judicial authority, and current administrative rulings and practice. The federal income tax consequences to any particular creditor may be affected by the nature of the taxable entity. There may also be state, local, or foreign tax considerations applicable to each creditor. Each creditor is urged to consult its accountant or tax lawyer to determine the effect of this Plan upon its claim.

### N.  Affiliate Relationships

Dernick owns 20% or more of the voting securities in the following entities:

- Dernick Land, LLC: 44.615%

- Wimmer Petroleum Corporation: 50%

- Davey Energy, LLC:  100%

- DDDernick Management, LLC:  100%

- DDDernick Properties, Ltd.:  100%

### O.  Absolute Priority Rule

The Bankruptcy Code provides that, with respect to each class of creditors, such class must accept the plan or such class is not impaired under the plan. If a class does not accept the plan, then the bankruptcy court may confirm a plan over the failure of a class to vote for the plan, provided that for a class of unsecured claims, the plan must provide that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

Dernick believes that the Plan complies with the absolute priority rule in 11 U.S.C. § 1129(b).

### P.  Definitions

"Alliance" refers to Encore Alliance LLC.

"Allowed Claim" shall mean a claim as after objections or other issues involving the claim have been resolved "Arbitrator" shall mean Sylvia Mayer or such substitute or replacement person.

"B&A" refers to Baker & Associates.

"Bankruptcy Code" refers to Title 11 of the United States Code.

"Cinco" refers to Cinco Natural Resources, Inc.

"Court" refers to the United States Bankruptcy Court of the Southern District of Texas.

"Dernick" refers to Debtor, David Dwight Dernick

"D-Land" refers to Dernick Land, LLC.

"Debtor" refers to David D. Dernick.

"DRI" refers to Dernick Resources, Inc.

"Encore" refers to Dernick Encore, LLC,

"Effective Date" means the date that is fifteen (15) days after a final and non-appealed order is entered confirming Dernick's chapter 11 plan of reorganization.

"Encore" refers to Dernick Encore, LLC.

"Encore Units" refers to units in Dernick Encore, LLC that were owned by Dernick Land, LLC and transferred to NorthStar and Russell in January of 2016.

"Homestead" refers to the real property located at 6014 Pebble Beach Drive, Houston, Texas 77069, which is Dernick's homestead.

"Litigation" shall mean in the lawsuit styled, *David H. Russell Family Ltd, Partnership, LLLC, vs. Stephen H. Dernick and David D. Dernick* (consolidated with *NorthStar Gas Ventures, LLC vs. Stephen H. Dernick and David D. Dernick*), civil action number 4:17-cv-01230 pending in the United States District Court for the Southern District of Texas.

"Judgment" or "Judgments" refers to judgment entered at docket #46 on April 3, 2018, in the lawsuit styled, *David H. Russell Family Ltd, Partnership, LLLC, vs. Stephen H. Dernick and David D. Dernick* (consolidated with *NorthStar Gas Ventures, LLC vs. Stephen H. Dernick and David D. Dernick*), civil action number 4:17-cv-01230 pending in the United States District Court for the Southern District of Texas.

"NorthStar" refers to NorthStar Gas Ventures, LLC.

"Payees" refer to Russell, Encore and Alliance.

"Revised Notes" refer to the promissory notes executed by Dernick to NorthStar , Russell, and Alliance dated in April 2013, with an interest rate of 18% and a maturity date of January 5, 2016, in the original combined principal amounts due from Dernick and his brother, Stephen, being $2,798,118 to Northstar, $8,918,459 to Russell and $2,343,477 to Alliance.

"Riley LLC" refers to Riley Exploration Permian, LLC.

"Riley Inc." refers to Riley Exploration Permian Inc.

"Russell" refers to David H. Russell Family Limited Partnership, LLLP.

"D Dernick Trust" shall mean the trust that will be created on the Effective Date in accordance with this Plan for the benefit of the creditors.

"D Dernick Trust Agreement" shall mean the agreement evidencing the terms and provisions governing the D Dernick Trust, which shall be substantially in accordance with the form as to be filed at a later time or submitted to the Bankruptcy Court prior to plan confirmation.

"D Dernick Trust Assets" shall mean the non-exempt assets of the Debtor that are designated as assets of the Dernick Liquidating Trust.  The D Dernick Trust Assets shall include the non-exempt assets of the Debtor, which shall include without limitation the Riley LLC interests and subsequently the Riley, Inc. interests and any return of the Encore Units.

"D Dernick Trustee" shall mean W. Marc Schwartz, the person designated to administer the D Dernick Trust in accordance with the provisions of D Dernick Trust Agreement or any replacement or substitute trustee.

## II.   Plan of Reorganization and Treatment of Claims

### A.  Plan Concept

The Debtor's Plan is a liquidating plan.  The D Dernick Liquidating Trust shall assume the responsibility to collect and liquidate the specified, non-exempt assets of the Debtor and make distributions to the creditors as provided herein and in accordance with the priorities and distributions as required in the Bankruptcy Code.  To the extent that the distribution set forth in this Plan differs from the Bankruptcy Code, the distribution provisions herein as approved by the Bankruptcy Court shall control and supersede the distribution priorities in the Bankruptcy Code.

Dernick's Plan contemplates the appeal of the Russell and NorthStar judgments and the pursuit of the fraudulent transfer claims.  If Dernick pursues the fraudulent transfer claims, then the D Dernick Trust will hold in trust any recovered funds from the fraudulent transfer claims pending the results of the appeal of the Russell and NorthStar judgments.  Provided that all other

matters in this case subject to litigation and claims disputes or objections have been resolved and upon completion of the appeal of the Russell and NorthStar judgments, the D Dernick Trust will disburse funds in the D Dernick Trust to the creditors of the Debtor in accordance with the Allowed Claims in this case and the provisions of this plan.

The D Dernick Trust will continue in existence until either the creditors with Allowed Claims have been paid in full or the assets of the D Dernick Trust have been collected, liquidated and paid to creditors with allowed claims.

If all creditors with allowed claims have been paid in full, then the D Dernick Trust will disburse any remaining funds to Dernick.

Professionals representing the Debtor may seek payment from the D Dernick Trust and the D Dernick Trust may make payments to attorneys for Dernick for attorneys' fees for the appeal, plan issues and the fraudulent transfer claims.

**Description of Classes**

Dernick's claims are divided into the classes described below in Table 1:

**Table 1. Classes of Claims**

| Class No. | Description |
|---|---|
| 1 | <u>Administrative Claims as of the Effective Date</u>. Class 1 consists of the allowed claims entitled to priority under 11 U.S.C. § 507(a)(1). Class 1 includes fees for services rendered and expenses incurred through the Effective Date by Dernick's counsel and other professionals appointed for him by the Court. Class 1 also includes the U.S. Trustee's pre-confirmation quarterly fees and other administrative expenses.<br><br>**Amount**: $150,000 (estimated)<br><br>**Status**: Priority<br><br>**Impaired**: N/A |

| | |
|---|---|
| 2 | Claim of Ford Motor Financial:  Class 2 consists of the secured claim of Ford Motor Financing<br><br>Amount:  $22,162.32 (Ford F150)<br><br>Status: Lien on vehicle:<br><br>Impaired: Yes |
| 3 | Claim of Harris County et al. Class 3 consists of the secured claim of Harris County et al ("Harris County") for 2018 *ad valorem* property taxes on Dernick's Homestead.<br><br>**Amount**:  $4,080.40 (estimated)<br><br>**Status**: Secured<br><br>**Impaired**: Yes |
| 4 | Claim of Cypress Fairbanks ISD. Class 4 consists of the secured claim of Cypress Fairbanks ISD ("Cypress") for 2018 *ad valorem* property taxes on Dernick's Homestead.<br><br>**Amount**:  $5,480.93 (estimated)<br><br>**Status**:    Secured<br><br>**Impaired**:  Yes |
| 5 | Claim of Wells Fargo Bank NA as Trustee. Class 5 consists of the secured claim of Wells Fargo Bank, NA as Trustee on the home loan of the Debtor.<br><br>**Amount**:  $314,972.88<br><br>**Status**:    Secured<br><br>**Impaired**: Yes |

| 6 | Claim of Internal Revenue Service. Class 6 consists of the unsecured priority claim of the Internal Revenue Service for taxes for 2017. **Amount**: $1,518.78 **Status**: Unsecured Impaired: Yes |
|---|---|
| 7 | Claim of NorthStar Gas Ventures, LLC. Class 7 consists of the claim of NorthStar Gas Ventures, LLC. NorthStar's claim is secured by a lien on funds in Dernick's bank accounts that NorthStar acquired through its pre-petition garnishment actions. The Debtor is contesting the garnishment. Otherwise, the claim of NorthStar is unsecured. **Amount**: $3,033,156.20 **Status**: Unsecured litigation. Provided however, that funds are held by Wells Fargo Bank that were garnished by NorthStar prior to the filing of this Bankruptcy case. The Debtor is seeking the return of these funds. If the funds are returned, the claim will be unsecured. The Debtor will contest this claim through the appeal of the judgment. **Impaired**: Yes |
| 8 | Claim of David H. Russell Family Limited Partnership, LP. Class 8 consists of the claim of David H. Russell Family Limited Partnership. **Amount:** $9,218,762.35 **Status:** Unsecured litigation. The Debtor will contest this claim through the appeal of the judgment. **Impaired**: Yes |

| | |
|---|---|
| 9 | <u>Claim of Dernick Encore, LLC.</u>  Class 9 consists of the claim of Dernick Encore, LLC.<br><br>**Amount:** $5,352,836.92<br><br>**Status:**  Unsecured litigation. The Debtor will contest this claim.<br><br>**Impaired:**  Yes |
| 10 | <u>Claim of Encore Alliance, LLC.</u>  Class 10 consists of the claim of Encore Alliance, LLC.<br><br>**Amount**:  $3,440,852.57<br><br>**Status:**  Unsecured litigation.  The Debtor will contest this claim.<br><br>**Impaired:**  Yes |
| 11 | <u>General Unsecured Claims</u>. Class 11 consists of all unpaid, pre-petition, allowed, unsecured, non-priority claims against Dernick.<br><br>**Amount**:  $320,000 (estimated)<br><br>**Status**:      General Unsecured<br><br>**Impaired**: Yes |

## B. Treatment of Classes

### 1. *Administrative Claims (Class 1)*

Except as otherwise provided below, each creditor in Class 1 will be paid in cash on the Effective Date if the creditor's claim has matured. In addition, the claim must also have been approved or allowed by the Court, if approval or allowance is necessary.

Dernick will pay, in the ordinary course of business, all fees for services rendered and expenses incurred after the Effective Date by his court-appointed counsel and other professionals. He will not need to file fee applications or seek approval or allowance from the Court to pay these

fees and expenses. Dernick will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

Baker & Associates ("B&A") is Dernick's bankruptcy counsel. If B&A and Dernick agree as to the amounts to be paid for the legal fees and expenses, B&A will accept payments over a period of time in lieu of payment at confirmation.

On the Effective Date of the Plan, Dernick will pay any pre-confirmation quarterly fees owed to the U.S. Trustee. After confirmation and until this case is closed by the Court, Dernick will pay quarterly fees to the U.S. Trustee as they accrue. Dernick will also serve on the U.S. Trustee a quarterly financial statement or affidavit of quarterly disbursements.

### 2. *Ford Motor Credit Company (Class 2)*

Class 2 consists of the secured claim of Ford Motor Credit Company LLC ("Ford"). Ford has filed a proof of claim in the amount of $22,162.32. Ford's claim is secured by a 2015 Ford F150 truck ("Ford Truck").

The Debtor will pay the principal amount of $22,162.32 to Ford at 5.5% interest in 60 monthly payments.

The Debtor shall maintain insurance on the Ford Truck, listing Ford as loss-payee. Ford shall retain its liens as to the Ford Truck until the claim is paid in full.

Until confirmation, payments to Class 2 will continue on the same day and in the same amounts as currently exist. After confirmation, payments will start on the fifth (5th) day of the first full calendar month following the Effective Date of the Plan.

Class 2 is impaired.

### 3.  *Claims for 2018 Property Taxes on Homestead (Class 3)*

Class 3 consists of the secured claim of Harris County et al ("Harris County").

The Debtor will pay the claim of Harris County at 12.0% interest in monthly payments starting on the 15th day of the month for the month following the Effective Date.  The payment schedule will provide that the amounts owed to Harris County will be paid in full with interest no more than sixty (60) months from the filing date of this case, or before May 9, 2023.

Harris County will retain the statutory liens securing its claim until such time as the claim is paid in full, including post-petition interest. If the reorganized Debtor fails to timely make his required plan payments to Harris County or if the reorganized Debtor becomes delinquent with respect to any post-petition ad valorem property taxes owed to Harris County, the reorganized Debtor will be considered to have defaulted under the Plan as to Harris County.

If the Debtor defaults under the Plan as to Harris County, Harris County may send a notice of the default (a "Default Notice") to the reorganized Debtor. If the reorganized Debtor does not cure the default within 20 days after receiving the Default Notice, Harris County may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. Once Harris County has sent three Default Notices to the reorganized Debtor on account of three occasions of default, Harris County will no longer need to send additional Default Notices to the reorganized Debtor. If the reorganized Debtor defaults again as to Harris County, Harris County may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

Class 3 is impaired.

### 4.  *Claims for 2018 Property Taxes on Homestead (Class 4)*

Class 4 consists of the secured claim of Cypress Fairbanks Independent School District ("Cypress Fairbanks").

The Debtor will pay the claim of Cypress Fairbanks at 12.0% interest in monthly payments starting on the 15th day of the month for the month following the Effective Date.  The payment schedule will provide that the amounts owed to Cypress Fairbanks will be paid in full with interest no more than sixty (60) months from the filing date of this case, or before May 9, 2023.

Cypress Fairbanks will retain the statutory liens securing its claim until such time as the claim is paid in full, including post-petition interest. If the reorganized Debtor fails to timely make his required plan payments to Cypress Fairbanks or if the reorganized Debtor becomes delinquent with respect to any post-petition ad valorem property taxes owed to Cypress Fairbanks, the reorganized Debtor will be considered to have defaulted under the Plan as to Cypress Fairbanks.

If the Debtor defaults under the Plan as to Cypress Fairbanks, Cypress Fairbanks may send a notice of the default (a "Default Notice") to the reorganized Debtor. If the reorganized Debtor does not cure the default within 20 days after receiving the Default Notice, Cypress Fairbanks may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court. Once Cypress Fairbanks has sent three Default Notices to the reorganized Debtor on account of three occasions of default, Cypress Fairbanks will no longer need to send additional Default Notices to the reorganized Debtor. If the reorganized Debtor defaults again as to Cypress Fairbanks, Cypress Fairbanks may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

Class 4 is impaired.

### 5.  *Home Loan (Class 5)*

Class 5 consists of the secured claim of Wells Fargo Bank, NA as Trustee on the Debtor's homestead. The claim is in the amount of $314,972.88 with $229.74 as the arrearage amount as of the petition date.

Upon the Effective Date, the Debtor will start making the ongoing monthly payments in accordance with the pre-petition contract between the parties, including any pre-petition modifications thereto with Wells Fargo Bank NA as Trustee.

All arrearages that accumulated during the chapter 11 plan will be paid to Mr. Cooper in equal payments such that all arrearage amounts both pre-petition and during this chapter 11 case will be fully repaid no later than May 9, 2023.  No interest will be paid on the arrearage amounts.

The Debtor will make payments of the arrears to Class 5 will start on the fifth (5th) day of the first full calendar month following the Effective Date of the Plan.

Alternatively, the Debtor may pay the prepetition arrearage claims early with no penalties.

Wells Fargo Bank NA as Trustee will retain all of its prepetition liens and encumbrances on the homestead. The promissory note and deed of trust on the homestead shall remain in place and shall continue to be valid and existing.  All terms of the Note and Deed of Trust shall be in effect and enforceable pursuant to the Texas Property Code, Chapter 51.

Wells Fargo Bank's Allowed Secured Class 5 Claim shall not be discharged until it is paid in full pursuant to Note and Deed of Trust.

Class 5 is impaired.

### 6. *Internal Revenue Service (Class 6)*

Class 6 consists of the Allowed Claim of the Internal Revenue Service.  The Debtor is in the process of filing his 2017 federal income tax return.  The Debtor will pay the amounts owed to

the Internal Revenue Service ("IRS") in full.

The IRS shall be paid from the assets of the D Dernick Liquidating Trust. The D Dernick Liquidating Trustee shall pay such claim when the claim has been finalized and funds exist in the D Dernick Liquidating Trust for the payment of such amount.  The claim shall be paid in full.

If the D Dernick Liquidating Trust does not have sufficient funds for payment of the claim in full, the Debtor shall pay such amount in full to the IRS (the Class 6 Creditor).

The IRS shall have such rights to receive reports and review actions as set forth in the Liquidating Trust provisions.

Claim 6 is impaired.

### 7.  NorthStar (Class 7)

Class 7 consists of the Allowed Claim of NorthStar after all appeals of the Judgment and after a final judgment in the Litigation is entered for which no further appellate review is available.

Although NorthStar has effectively restricted the use of funds of Dernick as a result of its pre-bankruptcy garnishment actions, it obtained the garnishment less than two weeks before the Petition Date. Its acquisition of the garnishment is, therefore, a preferential transfer. Dernick has petitioned the Court to avoid the transfer in Adversary Proceeding No. 18-03151.

The Debtor intends to appeal the Judgment.  Upon a final resolution of the (1) the Judgment and the Litigation, (2) any fraudulent transfer actions by the Debtor involving the Encore Units, and (3) resolution of all other claims, the D Dernick Trust will pay to NorthStar such amounts as then determined are due and owing to NorthStar, if any.  Payments will be made at the times and in the proportions and amounts as set forth in the Liquidating Trust provisions herein.

NorthStar shall have a right to receive funds from the D Dernick Trust in proportion of its

Allowed Claim and the total amount of funds in the D Dernick Trust, as more fully set forth in the Liquidating Trust provisions herein.

NorthStar shall have such rights to receive reports and review actions as set forth in the Liquidating Trust provisions.

Payments to NorthStar by the D Dernick Trust shall be made at or about the time as set forth in the Liquidating Trust provisions herein.

Claim 7 is impaired.

### 8. *David H. Russell Family Limited Partnership (Class 8)*

Class 8 consists of the Allowed Claim of Russell after all appeals of the Judgment and after a final judgment in the Litigation is entered for which no further appellate review is available.

The Debtor intends to appeal the Judgment. Upon a final resolution of the (1) the Judgment and the Litigation, (2) any fraudulent transfer actions by the Debtor involving the Encore Units, and (3) resolution of all other claims, the D Dernick Trust will pay to Russell such amounts as then determined are due and owing to Russell, if any. Payments will be made at the times and in the proportions and amounts as set forth in the Liquidating Trust provisions herein.

Russell shall have a right to receive funds from the D Dernick Trust in proportion of its Allowed Claim and the total amount of funds in the D Dernick Trust, as more fully set forth in the Liquidating Trust provisions herein.

Russell shall have such rights to receive reports and review actions as set forth in the Liquidating Trust provisions.

Payments to Russell by the D Dernick Trust shall be made at or about the time as set forth in the Liquidating Trust provisions herein.

Claim 8 is impaired.

### 9. *Dernick Encore, LLC (Class 9)*

Class 9 consists of the Allowed Claim of Dernick Encore.

The Debtor intends to object to the claim of Dernick Encore. Based on the Debtor's review of the claim, the claim has no merit.  Dernick Encore appears to believe that Dernick Encore is entitled to the  cash payments that the Debtor was paid as the legal agent/representative for the Dernick Resources, Inc./Cinco Natural Resources, Inc Minority Shareholder Group ("DR/CM Group") in a 2015 transaction between Cinco Natural Resources, Inc. ("Cinco"), Riley LLC and the DR/CM Group whereby the common shares, options and warrants owned by the DR/CM Group were redeemed and where the DR/CM Group agreed to a mutual settlement of all claims between the DR/CM Group and Cinco. At the time, Cinco was merging into Riley LLC and the merger could not proceed without the approval of the DR/CM Group and the mutual settlement of all claims. The assertions in the Dernick Encore claim have no merit or basis in fact.

Dernick Encore had previously released Dernick from any and all claims except claims as set forth in the Release.  The Debtor does not believe any claims exist.  The Debtor will object to the claim of Dernick Encore.

Upon a resolution of the objection to the claim of Dernick Encore, if Dernick Encore is determined to have a claim, then such claim shall be paid by the D Dernick Trust in proportion to the other claims to be paid by the D Dernick Trust.

If Dernick Encore is determined to have a claim, then Dernick Encore shall have a right to receive funds from the D Dernick Trust in proportion of its Allowed Claim and the total amount of funds in the D Dernick Trust, as more fully set forth in the Liquidating Trust provisions herein.

If Dernick Encore is determined to have a claim, then Dernick Encore shall have such rights to receive reports and review actions as set forth in the Liquidating Trust provisions.

Payments to Dernick Encore, if any, by the D Dernick Trust shall be made at or about the time as set forth in the Liquidating Trust provisions herein.

Claim 9 is impaired.

### 10. *Encore Alliance, LLC (Class 10)*

Class 10 consists of the Allowed Claim of Encore Alliance, LLC ("Encore Alliance").

The Debtor intends to object to the claim of Encore Alliance.

Upon a resolution of the objection to the claim of Encore Alliance, if Encore Alliance is determined to have a claim, then such claim shall be paid by the D Dernick Trust in proportion to the other claims to be paid by the D Dernick Trust.

If Encore Alliance is determined to have a claim, then Encore Alliance shall have a right to receive funds from the D Dernick Trust in proportion of its Allowed Claim and the total amount of funds in the D Dernick Trust, as more fully set forth in the Liquidating Trust provisions herein.

If Encore Alliance is determined to have a claim, then Encore Alliance shall have such rights to receive reports and review actions as set forth in the Liquidating Trust provisions.

Payments to Encore Alliance, if any, by the D Dernick Trust shall be made at or about the time as set forth in the Liquidating Trust provisions herein.

Claim 10 is impaired.

### 11. *General Unsecured Claims (Class 11)*

Class 11 consists of the general unsecured Allowed Claims not included in any other classes above. Upon completion of any claim objections and subject to the time of the payments, the D Dernick Trust will pay to the creditors with allowed claims such amounts as funds are available in proportion to the other allowed claims in classes 6, 7, 8, 9 and 10 up to one hundred percent (100%) of the allowed claims.

Payments to creditors in class 11 by the D Dernick Trust shall be made at or about the time as set forth in the Liquidating Trust provisions herein.

### 12. Payment of Remainder Amounts

Upon payment to all creditors in all classes in the full amount of each creditor's Allowed Claim, the remainder in the D Dernick Trust shall be paid to Dernick.

### 13. Liquidating Trust Provisions

On the Effective Date, the D Dernick Liquidating Trust (at times, "Liquidating Trust") shall be formed. The D Dernick Liquidating Trustee or Co-Trustees (at times, "Liquidating Trustee") shall be the trustee(s) of such trust.

The D Dernick Trust Assets shall be deemed owned and controlled by the D Dernick Liquidating Trustee for the benefit of the D Dernick Liquidating Trust. The Liquidating Trustee shall be the person with legal authority to take all actions for the Liquidating Trust.

*Delivery of Property to the Liquidating Trustee and the Trust and Funding of the Trust, Assets of the Liquidating Trust:* On the Effective Date, the Liquidating Trust shall be entitled to receive and retain the following: (1) any recoveries of claims under or related to the potential fraudulent conveyance claims that the Debtor or any entities that he may control have against NorthStar and/or Russell for the transfer of units in Dernick Encore in January of 2016 to NorthStar and Russell as part of the collateral and security of promissory notes executed by the Debtor to NorthStar and Russell, and (2) the units in Riley LLC as may converted to stock in Riley Inc. The Liquidating Trustee shall have the right to take any necessary actions to obtain possession and control of such assets. The Liquidating Trust shall not own or control any causes of action or claims. The Debtor shall retain the right to control and determine actions related to the claims and causes of action in the lawsuits and litigation matters. The Debtor shall retain for his personal use

his post-petition earnings, which shall not be part of the Liquidating Trust.

*Treatment of Classes and Payments of Claims:*  Each of the claims in each class shall be treated in the manners and methods described below:

| | |
|---|---|
| Class 1 (Administrative): | Payment in full of the approved and allowed Class 1 claims.  This class shall be paid in full from the Liquidating Trust prior to any other payments to other classes except as described below. |
| Class 2 (Ford Financial): | No payments will be made from the D Dernick Liquidating Trust. |
| Class 3 (Harris County): | No payments will be made from the D Dernick Liquidating Trust.  The Debtor will make such payments from his post petition earnings. |
| Class 4 (Cypress Fairbanks ISD): | No payments will be made from the D Dernick Liquidating Trust.  The Debtor will make such payments from his post petition earnings. |
| Class 5 (Wells Fargo Bank): | No payments will be made from the D Dernick Liquidating Trust.  The Debtor will make such payments from his post petition earnings. |
| Class 6 (IRS) | Payments will be made from the D Dernick Liquidating Trust in full as a first priority from the D Dernick Liquidating Trust.  Class 6 will be paid as a priority claim above and before amounts are paid to Classes 6, 7, 8, 9, 10 and 11. |
| Class 7 (NorthStar Gas): | Payments will be made from the D Dernick Liquidating Trust in full or in proportion to the Allowed Claim of such creditor to the total Allowed Claims of all creditors to be paid from the D Dernick Liquidating Trust as set forth herein. |
| Class 8 (Russell): | Payments will be made from the D Dernick Liquidating Trust in full or in proportion to the Allowed Claim of such creditor to the total Allowed Claims of all creditors to be paid from the D Dernick Liquidating Trust as set forth herein. |
| Class 9 (Dernick Encore) | Payments will be made from the D Dernick |

|  | Liquidating Trust in full or in proportion to the Allowed Claim of such creditor to the total Allowed Claims of all creditors to be paid from the D Dernick Liquidating Trust as set forth herein. |
|---|---|
| Class 10 (Encore Alliance): | Payments will be made from the D Dernick Liquidating Trust in full or in proportion to the Allowed Claim of such creditor to the total Allowed Claims of all creditors to be paid from the D Dernick Liquidating Trust as set forth herein. |
| Class 11 (General Unsecured Creditors): | Payments will be made from the D Dernick Liquidating Trust in full or in proportion to the Allowed Claim of such creditor to the total Allowed Claims of all creditors to be paid from the D Dernick Liquidating Trust as set forth herein. |

Creditors with Allowed Claims in Class 1 shall be paid in full from the assets of the D Dernick Liquidating Trust.

Creditors with Allowed Claims in Class 2 shall be paid in full from the assets of the D Dernick Liquidating Trust.

Creditors with Allowed Claims in Class 6 shall be paid in full from the assets of the D Dernick Liquidating Trust prior to and before claims in Classes 7, 8, 9, and 10 are paid.

Creditors with Allowed Claims in Classes 7, 8, 9 and 10 shall be paid the greater of the following: (1) the Allowed Claim of such creditor, or (2) if the D Dernick Liquidating Trust has insufficient assets to pay all Allowed Claims in full, the percentage amount of the D Dernick Liquidating Trust assets (remaining after payment of the Class 1 and Class 6 Allowed Claims) determined by a percentage whose numerator is the Allowed Claim of such creditor and the denominator is the total of all Allowed Claims of creditors in Classes 7, 8, 9 and 10 entitled to be paid from the D Dernick Liquidating Trust.

*Election on Payments.* Any creditor may elect to receive units, stock or other assets in kind

as held by the Liquidating Trustee in lieu of cash.  In such case when a payment or payments are to be made, the creditor may notify the Liquidating Trustee that such creditor elects to receive its payment in units, stock or other equivalent ownership. To the extent that the Liquidating Trustee may make a distribution in kind, the Liquidating Trustee shall make such distribution in kind if requested by a creditor or the Debtor.

*Payment to Debtor.*  If all creditors entitled to be paid from the Liquidating Trust are paid the total amount of each such creditor's Allowed Claim, the remaining assets shall be paid to the Debtor.  Upon the Liquidating Trustee determining that all creditors entitled to be paid have been paid in full, the Liquidating Trustee shall send written notice to all such creditors and the Debtor that the Liquidating Trustee shall pay the remaining amounts to the Debtor.  Any party in interest shall have twenty-one (21) days from the date of such written notice to object to such notice.  If no objections are submitted to the Liquidating Trustee, then the Liquidating Trustee may pay such funds to the Debtor.  If any creditor objects, the Arbitrator shall make a final decision on such payment.

*Responsibilities and Duties of Liquidating Trustee:*  From and after the Effective Date, the Liquidating Trustee shall hold all assets received for the Liquidating Trust in the same form as received.  If the Liquidating Trustee determines that any assets should be sold, abandoned, assigned or other actions taken, then the Liquidating Trustee shall give written notice of such proposed action(s) to the creditors and the Debtor.  The creditors and Debtor shall have twenty-one (21) days to object.  If not objection is submitted, then the Liquidating Trustee may take such proposed action.  If an objection is submitted, then the Arbitrator (as herein defined) shall be responsible for determining whether such proposed action should occur.  The Liquidating Trustee shall be responsible for the investment of any cash in the Liquidating Trust.  Any cash investments

shall be in U.S. government issued securities or such other investments as are insured by U.S. government obligations, or as allowed in writing by all creditors entitled to receive funds from the D Dernick Liquidating Trust.

Except as provided herein, the D Dernick Liquidating Trustee shall hold all assets pending a final resolution of the Judgments and appeals of the Judgments of the claims of NorthStar and Russell against the Debtor and his brother, Stephen H. Dernick, in such form as received.  At such time as the Judgments become final and non-appealable or the Litigation reaches a final judgment for which no further appellate review is available, and all other claims entitled to receive assets from the D Dernick Liquidating Trust are final, the assets in the D Dernick Liquidating Trust shall distributed by the D Dernick Liquidating Trustee as set forth herein.

The Liquidating Trustee may dismiss parties, release parties and otherwise take all necessary actions to control the D Dernick Trust Assets without further judicial review or order of the Court.

The Liquidating Trustee shall not have any control or involvement with the litigation claims and causes of action as described herein.  The Debtor shall retain and control all claims and causes of action including without limitation the right to determine actions to pursue, settlement, mediation or any other matters related to the claims and causes of action described herein.

*Professionals of D Dernick*.  All fees and expenses incurred during the chapter 11 case shall be determined by the bankruptcy judge in the ordinary process of a fee application and order on the application.  All court approved fees and expenses may be paid by the Liquidating Trustee after the orders allowing the fees and expenses are final and non-appealable and the Liquidating Trust has funds for such payment.

All post confirmation fees and expenses of professionals of D Dernick may be submitted

to the Liquidating Trustee.  The fee and expenses of the professionals for D Dernick for post confirmation services may be paid fees from the D Dernick Liquidating Trust as allowed by the D Dernick Liquidating Trustee at such times and in such amounts as are determined by the D Dernick Trustee.  Prior to the payment of any fees or expenses, the D Dernick Trustee shall provide written notice to the creditors in Classes 7, 8, 9 and 10 and allow such creditors twenty-one (21) days to object.

If any creditors object, then the final determination of the amount of such fees and expenses shall be made by the Arbitrator.

If an objection is filed, the entity that files the objection shall be responsible for payment of the costs of Arbitrator if the fees and expenses are allowed in an amount of ninety percent (90%) or more of the fees and expenses approved by the Liquidating Trustee.  If the fees and expenses are allowed for less than ninety percent (90%) of the amount as approved by the Liquidating Trustee, then the professional submitting the fee and expense request must pay the Arbitrator.  If the Arbitrator is not paid by the entity required to pay the Arbitrator, such entity or person may not request any further fees or expenses until the Arbitrator is paid in full.

Fees and expenses of professionals of the Debtor cannot exceed $200,000 from the D Dernick Liquidating Trust assets.

*Assets Excluded from the D Dernick Trust Assets:* The D Dernick Trust Assets shall **not** include the exempt assets listed and scheduled by the Debtor on Schedules A/B of his schedules and such other assets that are exempt assets under the laws of the State of Texas.  The funds garnished by NorthStar shall not be placed into or part of the Liquidating Trust.

*Retention of Professionals:* The D Dernick Liquidating Trustee may retain additional professionals (including any professionals retained in the chapter 11 case) to assist the Liquidating

Trustee in his or her duties and such expenses shall be reimbursed and paid from the assets of the D Dernick Liquidating Trust.

*Consummation of Plan:*  The D Dernick Liquidating Trustee shall be authorized to perform all actions required to consummate the chapter 11 plan and for the closing of the Chapter 11 case, including but not limited to the filing of any post confirmation tax returns, certificates, and applying for a final decree pursuant to section 350 of the Bankruptcy Code.

*Review of Claims:*  The Debtor shall be responsible for the review of claims against the Debtor and the filing and prosecution of objections to the claims against the Debtor, if objections are filed.  Alternatively, the Debtor may allow the D Dernick Liquidating Trustee to review the claims against the Debtor and file and prosecute objections to the claims against the Debtor.

*Reports by the Liquidating Trustee:*  The D Dernick Liquidating Trustee will distribute a calendar quarterly reporting to all creditors entitled to funds from the Liquidating Trust and the Debtor.  The quarterly reports will detail the receipt of funds, the amounts held by the D Dernick Liquidating Trust, any payments made to each claimant as provided for under the Plan and any other reasonable information to be provided by the D Dernick Liquidating Trustee or as reasonably requested by any creditor of the D Dernick Liquidating Trust.

*Tax Attribute Assignments.*  To the extent that any taxes are attributable to any distributions to be made, the Liquidating Trustee shall issue such federal income tax forms or documents as are necessary for such tax attributes.  If the Liquidating Trust is required to pay any federal income or other taxes, the Liquidating Trustee is authorized to pay such taxes and report such tax payments to the creditors or the Debtor.  To the extent possible, the tax attributes shall follow the distributions of cash or equivalent units.

*Payments to Liquidating Trustee:*  The Liquidating Trustee shall be entitled to be paid for

his services and expenses on a monthly basis, provided that the Liquidating Trust has asset to pay the Liquidating Trustee.  The Liquidating Trustee shall maintain time records and expense records and may submit such records to the creditors in Classes 6, 7, 8, 9 and 10 and the Debtor on a monthly basis.  If no creditors with notice and the Debtor do not object in writing within twenty-one (21) days of notice of the proposed payment, the Liquidating Trustee may pay himself or herself such fee and expenses as submitted to the creditors and the Debtor.

If any creditor or the Debtor objects, then the final determination of the fees and expenses to be paid to the Liquidating Trustee shall be determined by the Arbitrator in the same manner and with the same payment obligations as provided above for legal fees and expenses of professionals of the Debtor.

*Payments to the Arbitrator.*  Payments to the Arbitrator shall occur in the same manner as payments to the Liquidating Trustee, except that if any dispute arises over the payment amount, the parties may present such dispute to a court of competent jurisdiction for a decision.

*Resignation or Replacement of Liquidating Trustee or Arbitrator.*  If the Liquidating Trustee or Arbitrator resigns, dies or must be replaced, then a new Liquidating Trustee or Arbitrator shall be appointed.  If the parties entitled to payments from the Liquidating Trust and the Debtor cannot agree on a replacement, the Bankruptcy Court shall retain jurisdiction to designate a new Liquidating Trustee or Arbitrator.

*Termination of Liquidating Trust.*  Upon payment of all amounts in the Liquidating Trust, the Liquidating Trustee shall notify all creditors entitled to receive funds from the Liquidating Trust and the Debtor that the Liquidating Trust shall be finalized and terminated.  Unless any party objects to such termination, the Liquidating Trust shall be terminated when the Liquidating Trustee sends notice of termination.  If any party objects, then the Arbitrator shall make a determination

as to the termination of the Liquidating Trustee.

*Liability of Liquidating Trustee.*  The Liquidating Trustee shall have no liability for any actions or omissions taken in good faith and with a reasonable belief that such actions or omissions should occur, except for self-dealing, willful malfeasance or fraud.

### C.  Disputed Claims and Objections to Claims

Dernick may file an objection to any claim within sixty (60) days from the Effective Date of the Plan. Objections not filed within the foregoing time period will be deemed waived, except to the extent that the grounds for the objection could not have been discovered prior to the expiration of the sixty (60) day time period. If an objection is filed to any claim, payments on the claim will not begin until after an order of the Court allowing the claim has become final.

### D.  Executory Contracts

Upon confirmation of this Plan, Dernick will be deemed to have assumed the following executory contracts:

None.

Dernick will be deemed to have rejected all other executory contracts and leases as of the Effective Date. "Leases" as used in this section does not include mineral leases.

### E.  Feasibility to Perform and Implementation of the Plan

Dernick believes that the proposed Plan is feasible. As noted earlier, Dernick was current on all of his debt that was secured by his personal home and one vehicle which is being sold for an amount that should equal or exceed the total debt due, so Dernick does not expect to have any difficulty maintaining his house payment with his future income. The problematic debts for

Dernick and the debts that caused him to file the bankruptcy case is the Judgment. If Dernick's

appeal of the Judgments is successful, those claims may no longer exist and Dernick will easily be

able to pay the remaining unsecured debt. If Dernick's appeal is not successful, then his obligations

under the Plan do not depend on his future income, but on the liquidation of non-exempt assets

that will be part of the D Dernick Trust.

The projections attached as Exhibit B.

**F.  Acceptance or Rejection of the Plan**

Each impaired class of claims will be entitled to vote separately to accept or reject this Plan

unless that class receives no distribution under the Plan. Any class receiving no distribution is

deemed to have rejected the Plan. Any unimpaired class of claims will not be entitled to vote either

to accept or to reject this Plan and is deemed to have accepted the Plan. Each creditor should read

this Plan and Disclosure Statement, then complete and return the attached ballot.

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by

creditors and holders of interests, at least sixty-six and two-thirds percent (66-2/3%) in amount of

allowed claims voting and fifty-one percent (51%) in number of allowed claims voting in each

class of claims must accept the Plan. Whether or not you expect to be present at the hearing, you

are urged to fill in, date, sign, and properly mail the Ballot for Accepting or Rejecting Plan of

Reorganization to Mr. Reese W. Baker, Attorney for Debtor, 950 Echo Lane, Ste. 200, Houston,

Texas 77024.

If any class rejects the Plan, the Debtor may seek to "cramdown" the confirmation of the

Plan pursuant to 11 U.S.C. § 1129(b). The Bankruptcy Code allows the Debtor to request the Court

to confirm the Plan notwithstanding the rejection of any class(es) of creditors if the Debtor can

demonstrate that (i) the Plan does not discriminate unfairly and (ii) the Plan is fair and equitable

with respect to each class of claims or interests that is impaired and has not accepted the Plan. In order to "cramdown" the Plan, the Debtor will have to demonstrate to the Bankruptcy Court at a hearing that these two standards have been satisfied. This hearing would be part of the confirmation hearing on the Plan. All creditors may be part of the confirmation hearing and will have an opportunity to participate in it.

### G.  Jurisdiction of the Bankruptcy Court

The Bankruptcy Court will retain exclusive jurisdiction of the case after the confirmation date with respect to the parties to, and the subject matter of, this Plan and the claims, applications, orders, damages, and other events as described in the Plan.

## III.    Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in 11 U.S.C. §§ 1129(a) or (b) of the Code. These include the following requirements: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting the votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in 11 U.S.C. § 1129 and they are not the only requirements for confirmation.

### A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

However, many parties in interest are not entitled to vote to accept or reject the Plan. A

creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes; and (2) impaired.

In this case, Dernick believes that Classes 2 through 11 are impaired and that holders of claims in the impaired classes are therefore entitled to vote to accept or reject the Plan.

### 1.  *What Is an Allowed Claim?*

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the debtor has scheduled the claim on the debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing proofs of claim was September 26, 2018.

### 2.  *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is impaired under the Plan. As provided in 11 U.S.C. § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.  *Who is Not Entitled to Vote?*

The holders of the following types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;

- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims in unimpaired classes;

- holders of claims entitled to priority pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3), and (a)(8);

- holders of claims in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

Even if you are not entitled to vote on the Plan, you may have a right to object to the confirmation of the Plan.

### 4.  Who Can Vote in More Than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject the Plan in each capacity, and should cast one ballot for each claim.

### B.  Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes.

### 1.  Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2.  Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by 11 U.S.C. § 1129(b), including the "absolute priority rule." Under the absolute priority rule, the Court may confirm the Plan over the failure of a class to vote for the Plan provided that for a class of unsecured claims, the Plan must provide that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date of the Plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. Dernick believes that the Plan complies with the absolute priority rule in the Bankruptcy Code. The Debtor receives nothing from the Liquidating Trust until all creditors with Allowed Claims have been paid in full.

A plan that binds nonaccepting classes is commonly referred to as a "cramdown" plan. The Bankruptcy Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of 11 U.S.C. §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cram down" confirmation will affect your claim, as the variations on this general rule are numerous and complex.*

### C.  Effect of Confirmation

As provided for in 11 U.S.C. § 1141, the provisions of the Plan will bind Dernick and any creditor under the Plan, whether or not the claim of the creditor is impaired under the Plan and

whether or not the creditor has accepted the Plan. As provided for in 11 U.S.C § 1141(b), confirmation of the Plan vests all of the property of the estate in Dernick. After confirmation of the Plan, all of Dernick's property dealt with by the Plan (which includes all of Dernick's property) is free and clear of all liens, claims, and interests of creditors and equity security holders, except to the extent provided in this Plan. So long as Dernick makes the payments proposed by this Plan, no creditor may seek to collect any amounts from Dernick that were owed prior to the filing of the chapter 11 case or that are provided for in this Plan.

After Dernick has made all payments set forth in this Plan, including payments made by the D Dernick Liquidating Trust, he may request that the case be re-opened for the purpose of entering an order of discharge. After the Court determines that Dernick has made all payments required by the Plan, including payments made by the D Dernick Liquidating Trust, the Court may enter an order of discharge. An order of discharge from the Court will discharge Dernick from any debt that arose before confirmation of this Plan to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that it will not discharge Dernick from any debt: (i) imposed by this Plan; (ii) of a kind specified in 11 U.S.C. § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in 11 U.S.C. § 1141(d)(6)(B).

The rights afforded in the Plan will be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever occurring on or prior to the confirmation date, including any interest accrued thereon from and after the petition date, against Dernick or any of its assets or properties. Except as otherwise provided herein, upon the payment of the amounts provided in this Plan, in accordance with 11 U.S.C. § 1141, all such claims against Dernick will be satisfied, discharged, and released in full. Except as otherwise provided herein, all

creditors will be precluded from asserting against Dernick any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature occurring on or prior to the confirmation date.  Specifically and without limitation, if the funds in the Liquidating Trust are not sufficient to fully pay the Allowed Claims of all creditors, the Debtor shall still receive a discharge when all funds in the Liquidating Trust have been paid to the creditors with Allowed Claims.

## IV.   Additional Sources of Information

### A.  Financial Information Filed with the Court

- Schedules A through H and Summary of Schedules

- Statement of Financial Affairs

- Monthly Operating Reports

Please be advised that the bulleted financial information above is available in the office of the Clerk of the United States Bankruptcy Court, 515 Rusk, Houston, Texas.

### B.  Attached Exhibits

The following documents are attached as exhibits to this Plan:

- Exhibit A: Monthly operating reports for the two months prior to the date of this Plan

- Exhibit B: Revenue projections and payments for three years following the Effective Date

- No liquidation analysis is provided since this is a liquidating plan.

Dated: October 1, 2018

/s/ David D. Dernick

_____
David D. Dernick, Debtor


ATTORNEY FOR THE DEBTOR:

/s/ Reese Baker
Reese Baker
TX Bar No. 01587700
Baker & Associates
950 Echo Lane, #200
Houston, Texas 77024
(713) 979-2279
(713) 869-9100 Fax


Counsel for the Debtor has made no independent investigation of the information contained herein.