

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
05/22/2020

| | | |
|---|---|---|
| IN RE: § | | |
| STEPHEN HARRY DERNICK, *et al* § | CASE NO: 18-32417 | |
| § | | |
| DAVID DERNICK; aka DERNICK § | CASE NO: 18-32494 | |
| § | Jointly Administered Order | |
| Debtors § | | |
| § | CHAPTER 11 | |

**MEMORANDUM OPINION**
*Resolving ECF No. 323*

Pending is the Court's Show Cause Order as to why Reese Baker should not be sanctioned under Federal Rule of Bankruptcy Procedure 9011(b) for his failure to present any evidence to support his Motion to Disqualify ("*Motion*").

## I. FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to contested matters pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

Stephen Dernick and David Dernick ("*Debtors*") filed their voluntary chapter 11 petitions on May 4, 2018, and May 9, 2018, respectively.[1] On June 26, 2018, the Court entered an order approving Mr. Baker as Debtors' counsel.[2] Subsequently, Debtors' bankruptcy petitions were consolidated and jointly administered under 18-32417.[3] Soon thereafter, on August 8, 2018, Mr.

---

[1] *See* Case No. 18-32417, ECF No. 1; Case No. 18-32494, ECF No. 1.
[2] ECF No. 30.
[3] *See* ECF No. 38; Case No. 18-32417, ECF No. 32.

Page | 1

Baker filed Debtors' Motion.[4]  In the Motion, Debtors alleged that Foley & Lardner LLP[5] ("*Foley Gardere*") previously represented Debtors in substantially related matters and are in possession of relevant confidential information.[6]  Debtors argued that such former representation was enough to disqualify Foley Gardere from being counsel for Dernick Encore., LLC ("*Dernick Encore*")[7]

On August 29, 2018, Dernick Encore filed its Response to Debtors' Motion ("*Response*").[8]  In its Response, Dernick Encore argued that Foley Gardere's representations did not amount to a former client representation, and that the former relationships are not substantially related to Foley Gardere's representation of Dernick Encore.[9]  On September 18, 2018, this Court conducted a two day evidentiary hearing on the Motion, concluding on October 23, 2018.[10]  At the conclusion of the hearing, the Court denied the Motion, and further ordered that, inter alia, Foley Gardere may file an application for fees and costs in connection with this matter.[11]

On November 6, 2018, Dernick Encore filed its Application to Recover Fees and Expenses Related to Debtors' Motion ("*Fee Application*"), seeking $101,704.00 in fees and $189.15 in expenses."[12]  On November 25, 2018, Debtors filed a response to Dernick Encore's Fee Application.[13]  The day of the hearing, January 14, 2019, Debtors supplemented their

---

[4] ECF No. 76.
[5] Formerly known as Gardere Wynne Sewell LLP.
[6] ECF No. 76.
[7] *Id.*
[8] ECF No. 120.
[9] *Id.* at 2.
[10] Min. Entry Sept. 17, 2018.
[11] Min. Entry Oct. 23, 2018; ECF No. 189.
[12] ECF No. 193.
[13] ECF No. 214.

response to Dernick Encore's Fee Application.[14] Within their supplemental response, Debtors argued that even though the Court found that the matters Foley Gardere worked on were not substantially related to the matters at issue in the bankruptcy case, the Debtors' misjudgment was not sufficient to justify an award of fee shifting in favor of Dernick Encore.[15] Debtors additionally raised the lack of statutory authority for the Court's award of fees, and that Foley Gardere's fees should be reduced.[16]

On January 14, 2019, the Court heard arguments on Dernick Encore's Fee Application and issued its Show Cause Order, ordering that the matter would sua sponte proceed under Federal Rule of Bankruptcy Procedure 9011.[17] Within the Show Cause Order, this Court ordered the Dernicks and Mr. Baker to show cause why they have not violated Rule 9011(b) as it concerns the Motion and are therefore jointly and severally liable for Dernick Encore's fees and expenses.[18]

On February 14, 2019 Debtors filed their Emergency Application for Authority to Employ Walker & Patterson, P.C. as their counsel.[19] Debtors' current counsel at that time, Mr. Baker, filed his own Emergency Motion to Withdraw as Debtors' Counsel on the same date.[20] The Court set the two matters for a telephonic hearing the very next day. After hearing arguments, the Court permitted Mr. Baker to withdraw as Debtors' Counsel, and Walker & Patterson, P.C. to appear as Debtors' new counsel.[21]

On February 22, 2019 Debtors filed a response to this Court's Show Cause Order,

---

[14] ECF No. 295.
[15] *Id.* at 3.
[16] *Id.* at 2.
[17] ECF Nos. 297, 323.
[18] ECF No. 323.
[19] ECF No. 338.
[20] ECF No. 345.
[21] Min. Entry Feb. 15, 2019; ECF No. 353.

arguing that they should not be sanctioned under Rule 9011(b) because they did not file the Motion for an improper purpose, and they had evidentiary support, or they were likely to have evidence to support the allegations contained in the Motion.[22] On March 1, 2019, Dernick Encore filed its Reply to Debtors' Response to this Court's Show Cause Order.[23] Dernick Encore argued that Debtors filed the Motion for an improper purpose, namely to harass, cause delays to Dernick Encore's investigation process, and to needlessly increase the cost of litigation.[24]

On the same day, Mr. Baker filed his individual response to the Show Cause Order,[25] and amended it three days later.[26] Mr. Baker's amended response argues, inter alia, that this Court's Show Cause Order failed to describe the specific conduct that appeared to violate Rule 9011(b), and as such, Rule 11 sanctions should not be issued.[27] Dernick Encore filed its Reply to Mr. Baker's Amended Response on March 8, 2019.[28] On March 15, 2019, Mr. Baker filed his Sur-Reply to Dernick Encore's Reply, attacking the reasonableness and necessity of Foley Gardere's fees.[29] On March 26, 2019 the Court conducted an evidentiary hearing regarding this Court's Show Cause Order,[30] and continued the matter to May 1, 2019.[31] Commencing May 1, 2019 the Court took further evidence and concluded the hearing on May 2, 2019.[32] On October 3, 2019, Debtors, the David H. Russell Family Limited Partnership, NorthStar Gas Ventures, LLC and

---

[22] *See generally* ECF No. 357.
[23] ECF No. 366.
[24] ECF No. 366 at 9, 12.
[25] ECF No. 367.
[26] ECF No. 368.
[27] *Id.* at 3–4.
[28] ECF No. 369.
[29] ECF No. 372.
[30] ECF No. 384.
[31] *Id.*
[32] Min. Entry May 2, 2019.

Dernick Encore ("*Parties*") voluntarily submitted to mediation.[33]

The Parties settled and on January 27, 2020, the Court held a hearing on the Parties' Motion to Compromise. At that hearing, the Court approved the settlement, leaving only the Show Cause Order matter unresolved.[34] In the Court's Amended Order Approving Compromise of the Controversy, the Court dismissed Debtors from the Show Cause Order.[35] On February 7, 2020, Dernick Encore filed its Notice seeking a determination from the Court regarding the Show Cause Order as it pertains to Mr. Baker.[36]

The Court has considered the relevant case law, the various motions related to the Show Cause Order, Dernick Encore's Fee Application, all evidence in the record, and oral arguments at the various hearings, and now issues the instant Memorandum Opinion.

## II.    CONCLUSIONS OF LAW

a.    **Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order**

The Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[37] The matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because the acts leading to the issuance of the Show Cause Order concern the administration of the Debtors' bankruptcy cases. Further, this dispute is a core proceeding pursuant to the general "catch-all" language of 28 U.S.C. § 157(b)(2).[38] Here, the acts that led to the issuance of the Show Cause Order mainly concerns the conduct of an attorney who was counsel for Debtors. The Court has

---

[33] ECF No. 536.
[34] Min. Entry Jan. 27, 2020.
[35] ECF No. 558.
[36] ECF No. 564
[37] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[38] *See Southmark Corp. v. Coopers & Lybrand* (*In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

the power to police conduct of attorneys who appear in this Court and to take action with respect to those attorneys who misbehave.[39] But for Mr. Baker's Motion to Disqualify, the Show Cause Order would not have occurred. Therefore, the circumstances before the Court make this dispute a core proceeding, and the Court holds constitutional authority to enter an order.[40] Finally, venue is governed by 28 U.S.C. §§ 1408, 1409. Venue is proper because Debtors' principal place of business has been in the Southern District of Texas for the 180 days immediately preceding their petition date.[41]

**b.    Whether the Court May Issue Sanctions Pursuant to Rule 9011**

The Court first takes up procedural issues: whether the Court has authority to order sanctions and sua sponte impose attorneys' fees. Mr. Baker argued that: (1) the Court may not sua sponte impose an award of attorneys' fees; and (2) the Court failed to explain the relationship between the grounds for the sanctions and the offending conduct.[42]

**1.    Sua Sponte Sanctions Pursuant to Rule 9011**

Rule 9011 is modeled after Federal Rule of Civil Procedure 11, and is essentially identical to Rule 11.[43] Thus, the authorities that construe Rule 11 are applicable to the case at bar, which deals with Rule 9011. The central goal of Rule 11 is to deter abusive litigation practices.[44] To that end, the focus is on the conduct of the parties.[45] While sanctions under Rule 11 and Rule 9011 serve an important purpose, they are a tool that must be used with caution; the frequent imposition of sanctions risks stifling zealous and creative advocacy as well as

---

[39] *Chambers v. NASCO*, 501 U.S. 32 (1991); *Knight v. Luedtke* (*In re Yorkshire, LLC*), 540 F.3d 328, 332 (5th Cir. 2008).
[40] *See Wellness Intern. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015); *Stern v. Marshall*, 564 U.S. 462 (2011).
[41] *See* ECF No. 1; Case No. 18-32494, ECF No. 1.
[42] *See generally* ECF Nos. 357, 368, 372.
[43] *Compare* FED. R. CIV. P. 11 *with* FED. R. BANKR. P. 9011.
[44] *See generally Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).
[45] *See Cooter & Gell*, 496 U.S. at 393; *Baermann v. Ryan* (*In re Ryan*), 411 B.R. 609, 613 (Bankr. N.D. Ill. 2009).

potentially meritorious claims that circumstances make difficult to prove.[46]

Rule 9011 provides in part:

**(b) Representations to the Court.** By presenting to the Court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

**(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

**(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

**(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

**(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

**(1)** *How Initiated.*

**(A) By Motion.** A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

---

[46] *See* FED. R. CIV. P. 11 advisory committee's note (stating that Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories).

> **(B) On Court's Initiative.** On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.
>
> **(2)** *Nature of Sanction; Limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
>
> . . .
>
> **(3)** *Order.* When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.[47]

In the United States, courts follow the American Rule, which holds that the prevailing litigant is not entitled to collect reasonable attorneys' fees from the loser unless an exception applies.[48] As one may guess, one such exception is found within Rule 9011, which allows the court to award attorneys' fees "to the party prevailing on the [motion for sanctions]."[49] Rule 9011 however makes it clear that any award of attorneys' fees must be by motion, and the Court may not impose an award of attorneys' fees on its own.[50] Any sanctions imposed on the court's initiative are limited to nonmonetary sanctions or a monetary payment payable to the court.[51]

Unfortunately for Mr. Baker, there is another exception. Notwithstanding Rule 9011 and the American Rule, in narrowly defined circumstances federal courts have inherent powers to

---

[47] FED. R. BANKR. P. 9011(b)–(c).
[48] *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975).
[49] *See* FED. R. BANKR. P. 9011(c)(1)(A).
[50] *See id*; *Marlin v. Moody Nat. Bank, N.A.*, 533 F.3d 374, 379 (5th Cir. 2008).
[51] *See* FED. R. BANKR. P. 9011(c)(2).

assess attorneys' fees.[52] A federal court may assess attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[53] If the Court finds that there has been fraud practiced upon it, or that the very temple of justice has been defiled, it may assess attorneys' fees against the responsible party, as it may when a party shows bad faith by delay or disruption or by hampering enforcement of a court order.[54] Where there is bad faith conduct in the course of litigation that can adequately be sanctioned under the Rules, a court should ordinarily rely on the Rules rather than its inherent powers.[55] But, that does not preclude the Court from relying on its inherent powers to sanction Mr. Baker if in the Court's informed discretion, Rule 9011 is not up to task.

Here, no motion for sanctions was filed by Dernick Encore in response to Mr. Baker's Motion. At the end of the hearing on the Motion, the Court authorized Dernick Encore to file an application for fees and expenses.[56] After hearing arguments on Dernick Encore's Fee Application, the Court issued its Show Cause Order.[57] Because a motion for sanctions was not promulgated, Rule 9011 does not authorize the Court to order an award of attorneys' fees. However, if the Court finds that the other sanctions available to the Court under Rule 9011 are not enough, the Court may still rely on its inherent power to sanction Mr. Baker.

### 2. Adequacy of the Court's Show Cause Order

Mr. Baker attempts to argue that the Court's Show Cause Order did not describe the specific conduct that appears to violate Rule 9011, thus depriving Mr. Baker of due process.[58]

---

[52] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991).
[53] *Id.* (quoting *Alyeska*, 421 U.S. at 258–59).
[54] *Id.*
[55] *See id.* at 50.
[56] *See* ECF No. 191.
[57] *See* ECF No. 323.
[58] *See* ECF No. 357 at 5; ECF No. 389 at 51.

Due process requires only that the sanctioned party be afforded notice and a reasonable opportunity to be heard.[59] However, Mr. Baker conflates the specific findings a court must make before imposing sanctions under Rule 9011(c)(3) with the specific conduct that appears to violate Rule 9011(b) before entering a show cause order under Rule 9011(c)(1)(B).[60] The Court's Show Cause Order states in part:

> In the Order, the Court found that the Debtors presented no evidence to support their [Motion] and therefore the Debtors did not carry their burden under Fifth Circuit law.[61]
>
> . . .
>
> It is therefore ORDERED that:
>
> 1. [Debtors], and their counsel, Reese Baker, are ordered to show cause why each of them has not violated Rule 9011(b) as it concerns the [Motion] . . . .[62]

Here, the Court's Show Cause Order placed Mr. Baker on notice that the lack of any evidentiary support in his Motion was a possible violation of Rule 9011(b). The Court's Show Cause Order further provided Mr. Baker the opportunity to file a response and sur-reply, and provided Mr. Baker with an opportunity to be heard at a later date. In toto, Mr. Baker's assertions that the Court's Show Cause Order did not adequately describe the conduct that appeared to violate Rule 9011 fails to convince the Court. The Court now turns its attention to the substantive issues.

c.   **Whether Mr. Baker Violated Rule 9011(b)**

The Court now must determine whether Mr. Baker's Motion is sanctionable under

---

[59] *See Merriman v. Security Ins. Co. of Hartford*, 100 F.3d 1187, 1191 (5th Cir. 1996); *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).
[60] *Compare* ECF No. 357 at ¶ 26 *with* ECF No. 357 at ¶ 27–28.
[61] *See also* ECF No. 189 (holding that Debtors presented no evidence that the matters are substantially related or that Dernick Encore's counsel has relevant confidential information, and that Debtors cannot meet their burden under Fifth Circuit law).
[62] ECF No. 323.

Federal Rule of Bankruptcy Procedure 9011(b). A court may impose sanctions if it finds a violation of any one of the four subdivisions of Rule 9011(b).[63] The four subdivisions of Rule 9011(b) generally fall into two categories: the frivolousness clauses (or the objective component), and the improper purpose clause (or the subjective component).[64] The frivolousness clauses correspond to Rule 9011(b)(2)–(4) and requires that a party's attorney must perform a reasonable preliminary investigation of the facts and the applicable law before filing a paper in federal court.[65] The improper purpose clause corresponds to Rule 9011(b)(1) and prohibits the filing of a pleading for an improper purpose.[66] For thoroughness, the Court will discuss Rule 9011(b) in full.

### 1. The Frivolousness Clauses

The legal papers that an attorney files in a case must be grounded in both a nonfrivolous legal theory and well-founded factual contentions and/or denials that, at a minimum, have a reasonable possibility of having evidentiary support after further investigation and discovery.[67] Because objective reasonable inquiries must first be made, good faith per se is not enough to comply with the frivolousness clauses.[68] A court's inquiry should focus on the merits of the motion gleaned from the facts and law known or available to the attorney at the time of filing.[69]

Here, the Court must first determine whether Mr. Baker's Motion was objectively frivolous, in view of the law or facts, and then, if it is, whether Mr. Baker would have been

---

[63] *See* FED. R. BANKR. P. 9011(c).
[64] *See In re Raymond Professional Group, Inc.*, 420 B.R. 448, 461 (Bankr. N.D. Ill 2009).
[65] *See* FED. R. BANKR. P. 9011(b)(2)–(4).
[66] *See* FED. R. BANKR. P. 9011(b)(1).
[67] *See* FED. R. BANKR. P. 9011(b)(2)–(4).
[68] *See Ins. Ben. Administrators, Inc. v. Martin*, 871 F.2d 1354, 1359 (7th Cir. 1989).
[69] *See In re Mroz*, 65 F.3d 1567, 1572 (11th Cir. 1995); *Corp. of the Presiding Bishop v. Assoc. Contractors, Inc.*, 877 F.2d 938, 943 (11th Cir. 1989), *cert. denied*, 492 U.S. 1079 (1990); FED. R. CIV. P. 11, Advisory Committee Note.

aware of its frivolousness if he had conducted a reasonable inquiry.[70] If Mr. Baker failed to conduct a reasonable inquiry into the matter, the Court is obligated to impose sanctions even if Mr. Baker had a good faith belief that the Motion was sound.[71] The reasonableness of Mr. Baker's prefiling inquiry depends on the time available for investigation, whether Mr. Baker had to rely on Debtors for information as to the underlying facts, whether the Motion was based on a plausible view of the law, and may depend on the extent to which factual development necessitates discovery.[72]

To better understand whether Mr. Baker's Motion was frivolous, the Court shall compare what a party must establish to disqualify counsel under Fifth Circuit precedent, and contrast that to what Mr. Baker established. The Fifth Circuit in *In re American Airlines* expressly stated that upon seeking a motion to disqualify, the moving party must establish that there (1) was an actual attorney-client relationship between the moving party and the attorney they seek to disqualify; and (2) there is a substantial relationship between the subject matter of the former and present representations.[73] A moving party may also establish grounds for disqualification if the current representation in reasonable probability will involve the use of confidential information.[74]

Once an attorney-client relationship has been established, the question then turns to the substantial relationship test.[75] A substantial relationship may be found only after the moving party delineates with specificity the subject matters, issues, and causes of action that are common to the prior and current representations.[76] Once it has been established that prior matters are

---

[70] *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692 (11th Cir. 1995).
[71] *Id.*
[72] *Id.*
[73] *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992).
[74] *See In re American Airlines, Inc.*, 972 F.2d 605, 615 (5th Cir. 1992); TEX. DISCIPL. R. PROF'L CONDUCT R. 1.09.
[75] *See In re American Airlines, Inc.*, 972 F.2d 605, 615 (5th Cir. 1992).
[76] *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992).

substantially related to the present case, there is an irrebuttable presumption that relevant confidential information was disclosed during the former period of representation.[77] Lastly, the burden of proving that the present and prior representations are substantially related lies with the party seeking disqualification.[78]

Here, Mr. Baker had to establish (1) that there was an actual attorney-client relationship between Debtors and Foley Gardere; and (2) that there was a substantial relationship between the subject matter of Foley Gardere's representation of Debtors and Dernick Encore. The Court will take these in order.

### A. Attorney-Client Relationship Between Debtors and Foley Gardere

Foley Gardere's representations can be whittled down to several related matters: (i) Dernick Resources, Inc. ("*DRI*"); (ii) Cinco Minority Shareholder group ("*Cinco Minority*"); and (iii) Dernick Encore.

#### i.     DRI

DRI was a company engaged in the oil and gas business and was owned in part by Stephen Dernick and David Dernick.[79] In 2009, DRI merged with Cinco Resources, Inc. ("*CRI*").[80] Following the merger with CRI, the shareholders of DRI—namely Stephen Dernick, David Dernick, Dennis Bartoskewitz, and Alan Buckner—received cash and stock ownership options in CRI and became minority shareholders of CRI.[81] This group became colloquially known as Cinco Minority.

#### ii.     Cinco Minority

---

[77] *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992).
[78] *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992).
[79] ECF No. 389 at 79; Hrg. May 2, 2019, 2:00:00.
[80] Hrg. May 2, 2019, 2:00:00.
[81] ECF No. 389 at 69–70; Hrg. May 2, 2019, 2:00:00.

Cinco Minority was merely a moniker for the group of minority shareholders in CRI; it was not a legal entity.[82] While Debtors testified at trial that they were represented individually in 2011, no evidence of an engagement letter or invoice of any payment for services rendered to Debtors individually was provided.[83] Based on allegations that CRI wrongfully carved out and transferred valuable properties to Cima Resources, Inc.—thereby diluting Cinco Minority's stock in CRI—Cinco Minority engaged Foley Gardere ("*Engagement Letter*") on January 28, 2013 to represent them in a limited capacity with respect to CRI.[84]

### iii. Dernick Encore

Dernick Encore was a company engaged in the oil and gas business and was previously owned by Stephen Dernick and David Dernick.[85] Dernick Encore has been represented by Foley Gardere at least since 2015.[86]

Here, Mr. Baker easily satisfied the first prong. As established through evidence and trial testimony, an actual attorney-client relationship existed between Foley Gardere and Debtors vis-a-vis Cinco Minority. The Court now turns to Mr. Baker's failure to prove a substantial relationship between the subject matter of Foley Gardere's representation of Debtors and Dernick Encore, and whether such failure is sanctionable under Rule 9011(b).

### B. Substantial Relationship Between Cinco Minority and Dernick Encore

The crux of the dispute regarding Foley Gardere's representation of Cinco Minority centers around two interrelated points: the scope of the Engagement Letter, and the formation and dissolution of Corsa Petroleum LLC ("*Corsa*") and Cavallo LLC ("*Cavallo*").

---

[82] ECF No. 389 at 67, 93.
[83] Hrg. May 2, 2019, 2:27:00.
[84] ECF No. 389 at 105, 106, 108; Reese Baker's Ex. 8; Hrg. May 2, 2019, 2:26:30.
[85] ECF No. 389 at 85.
[86] ECF No. 389 at 85; Hrg. May 2, 2019, 11:52:00.

The Engagement Letter stated that Foley Gardere represented Stephen Dernick, David Dernick, Alan Buckner, and Dennis Bartoskewitz individually, and that the scope was limited to only preparing initial answers to litigation with respect to CRI, as Cinco Minority was already being represented by other counsel.[87]  Completion of Foley Gardere's scope of representation would terminate the attorney-client relationship.[88]  The Engagement Letter goes on to say "[c]ontinued work by us on this matter is conditioned upon timely payment of our invoices in accordance with the terms set forth above.  Should you for any reason be unable to or fail to comply with those terms, you hereby consent to our withdrawal from the representation."[89]  This was signed by all parties to the Engagement Letter.[90]

Based on trial testimony, Foley Gardere completed the scope of their representation in March of 2013.[91]  However, Foley Gardere was not paid until 2015, after forming and dissolving Corsa and Cavallo.[92]  In March of 2015, Mr. Bucker emailed and requested Foley Gardere to form Corsa and Cavallo, and that it was "on the Dernick Minority Shareholders client/matter."[93]  The governing person and registered agent for Corsa and Cavallo in the Certificates of formation was Mr. Buckner.[94]  On October 28, 2015, Mr. Buckner again emailed and requested Foley Gardere to dissolve Corsa and Cavallo.[95]  Adding confusion to the issue, Dernick Encore paid the legal invoice for formation and termination of Corsa and Cavallo.[96]

While Mr. Baker was aware that Cinco Minority engaged other counsel regarding

---

[87] Reese Baker's Ex. 8; Hrg. May 1, 2019, 2:44:00; Dernick Encore's Ex. 15.
[88] *See* Debtors' Ex. 1.
[89] Reese Baker's Ex. 8 at 185.
[90] *Id.* at 178.
[91] ECF No. 389 at 103–04; Reese Baker's Ex. 8; Hrg. May 2, 2019, 11:39:00.
[92] Hrg. May 1, 2019, 5:01:00, 5:09:00.
[93] Reese Baker's Ex. 9.
[94] Hrg. May 1, 2019, 4:16:00; Reese Baker's Exs. 10, 11.
[95] Reese Baker's Ex. 9.
[96] Hrg. May 1, 2019, 5:34:00; Debtors' Ex. 11.

settlement discussions, and that Foley Gardere's limited representation of Cinco Minority was completed in 2013,[97] Mr. Baker concluded that Foley Gardere represented Cinco Minority in settlement discussions with CRI through 2015.[98] Mr. Baker's conclusions were based on the Engagement Letter, the Corsa and Cavallo emails between Mr. Buckner and Foley Gardere where Mr. Buckner specifically stated that it was on the Dernick Minority Shareholders client/matter, the fact that Nancy McCormick was the organizer of Corsa and Cavallo, and the fact that Debtors never received formal termination of representation from Foley Gardere.[99]

The Court finds credible Mr. Baker's testimony that his review of the record before him raised reasonable concerns about Foley Gardere's scope of representations with respect to Debtors. While the Court carefully combed through the trial record and found certain points where Mr. Baker could have been more investigative in his inquiry before filing his Motion, the Court's job is not to direct counsel on how to prosecute their motions. Rather, the Court is guided by Rule 11 and Rule 9011, which cautions that sanctions run the risk of chilling zealous and creative advocacy, as well as potentially meritorious claims that circumstances make difficult to prove.[100] In reviewing the record, the Court notes that there are a fair number of complex and confusing details at play, especially regarding Debtors' numerous businesses, Debtors' dealings with CRI and DRI, and Debtors' dealings with various law firms, either individually or through their companies. Taking the record in toto, the Court is not convinced that Mr. Baker's Motion was objectively frivolous. The interrelatedness of Debtors' companies and the timing of representations would certainly give any competent attorney pause, and the

---

[97] Hrg. May 1, 2019, 2:44:00; Dernick Encore's Ex. 15.
[98] Hrg. May 1, 2019 2:38:00, 3:10:00, 3:19:00, 4:06:00.
[99] Reese Baker's Ex. 9; Debtors' Exs. 6, 11; Hrg. May 1, 2019 2:38:00, 3:10:00, 3:19:00, 4:06:00.
[100] *See* FED. R. CIV. P. 11 advisory committee's note (stating that Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories).

Court does not find that Mr. Baker's Motion approached frivolous levels under Rule 9011(b).

Therefore, the Court does not find sanctions against Mr. Baker appropriate under Rule 9011(b)(2)–(4).

### 2. The Improper Purpose Clause

Under Rule 9011(b)(1), the party filing the paper certifies that to the best of their knowledge, formed after an inquiry reasonable under the circumstances, "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The focus of a claim for sanctions under the "improper purpose" clause is on why the attorney filed the motion at issue, and Rule 9011(b)(1) sets forth a non-exclusive list of various improper purposes, such as harassment, causing unnecessary delay, or needlessly increasing the cost of litigation.[101] As direct evidence of motive, intent, or purpose is rarely available, the Court must look to objectively ascertainable circumstances that support an inference of improper purpose under Rule 9011(b)(1) and determine whether Mr. Baker crossed such line.[102]

Here, Dernick Encore argues that the Motion violated Rule 9011(b)(1) because it "caused [Dernick Encore] unnecessary expense and delay in this matter," was used as a "tactical weapon," was used as a "means to delay [Dernick Encore] from completing its investigation of

---

[101] *In re Saldana*, 531 B.R. 141, 165 (Bankr. N.D. Tex. 2015) (citing *Cadle Co. v. Pratt* (*In re Pratt*), 524 F.3d 580, 586 n.19 (5th Cir. 2008)).

[102] *See FDIC v. Maxxam, Inc.*, 523 F.3d 566, 581 (5th Cir. 2008) (affirming directive that a court should be looking for "objectively ascertainable circumstances that support an inference that a filing . . . caused unnecessary delay"); *Long v. Thommessen* (*In re Tjontveit*), 204 F. App'x 439, 441 (5th Cir. 2006) (affirming bankruptcy court's issuance of Rule 9011(b)(1) sanction against party for filing motion for sanctions against bankruptcy trustee, finding that party had engaged in a "pattern of activity" suing repeatedly and frivolously); *In re Enmon*, No. 12–10268, 2013 WL 494049, at *5 (Bankr. E.D. Tex. Feb. 7, 2013) (sanctioning bankruptcy attorney pursuant to Rule 9011(b)(1) for the filing of a chapter 11 bankruptcy petition and improperly invoking the automatic stay for the sole purpose of achieving a litigation objective rather than in a good faith rehabilitation attempt); *United States v. Int'l Bhd. Of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991) (holding that the court applies an objective standard of reasonableness when deciding whether the signer of a motion has crossed the line between zealous advocacy and plain pettifoggery).

the Debtors by sidelining its counsel," and "attempted to impact [Dernick Encore's] rights against the Debtors in these bankruptcy cases."[103] In support, Dernick Encore argued inter alia that they had to spend over $100,000 to defeat the Motion, and that the Motion delayed Dernick Encore from gathering discovery pursuant to their § 523 claim.[104]

However, if a court has already found that Rule 9011(b)(2)–(4) sanctions are inapplicable, Rule 9011(b)(1) sanctions are similarly inapplicable, as a filing that is warranted and has evidentiary support, or likely will have evidentiary support will be improper. Here, the Court cannot determine from objectively ascertainable circumstances before it that Mr. Baker's Motion was filed for improper purposes. The Court above found that given Debtors' complex history, Mr. Baker's Motion was reasonable based on the details before him and was not objectively frivolous. The Court likewise finds that Mr. Baker's Motion was not presented for an improper purpose under Rule 9011(b)(1).

Therefore, the Court does not find sanctions against Mr. Baker appropriate under Rule 9011(b)(1).

### III. CONCLUSION

Pending before this Court is its Show Cause Order.[105] For the reasons stated herein, the Court declines to impose Rule 9011 sanctions upon Mr. Baker.

SIGNED 05/22/2020.

Eduardo V. Rodriguez
United States Bankruptcy Judge

---

[103] *See* Dernick Encore's Ex. 9 at 89–90; *see also* ECF No. 366 at 8–9.
[104] *See generally* ECF No. 366.
[105] ECF No. 323.