**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **STEPHEN H. DERNICK,** | § | **Case No. 18-32417** |
| | § | |
| _Debtor._ | § | **Chapter 11** |
| | § | |
| **IN RE:** | § | |
| | § | |
| **DAVID D. DERNICK,** | § | **Case No. 18-32494** |
| | § | **(Jointly administered with** |
| | § | **Case No. 18-32417)** |
| _Debtor_. | § | **Chapter 11** |

### _AMENDED JOINT DISCLOSURE STATEMENT AND CHAPTER 11 PLAN FOR DEBTORS STEPHEN H. DERNICK AND DAVID D. DERNICK_

Stephen H. Dernick ("S. Dernick") and David D. Dernick ("D. Dernick") (collectively "Dernicks" or "Debtors") jointly file this Plan of Reorganization and Disclosure Statement. The Dernicks seek to repay their debts over time pursuant to the terms of this Plan of Reorganization. As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

The Court has not yet confirmed the Plan. In other words, the terms of the Plan are not yet binding on anyone. If the Court later confirms the Plan, then the Plan will be binding on the Dernicks and on all creditors and interest holders in this case.

The Dernicks represent that everything in this document is true to the best of their knowledge.

### READ THIS DOCUMENT CAREFULLY IF YOU WANT TO KNOW:

- Who can vote or object.

- The treatment of your claim is (_i.e._, what your claim will receive if the plan is confirmed).

- The history of the debtors and significant events during the bankruptcy.

- How the court will decide whether to confirm the plan.

- The effect of plan confirmation.

1

- Whether this plan is feasible.

## I.  BACKGROUND RELATED TO THE BANKRUPTCY

S. Dernick filed a voluntary petition on May 4, 2018, that commenced this chapter 11 bankruptcy case.  On May 9, 2018, D. Dernick filed his Chapter 11 Case.  The filing of the petitions constituted an order for bankruptcy relief under § 301 of the Bankruptcy Code.  Upon the filing of the case, an automatic stay was imposed pursuant to § 362(a) of the Bankruptcy Code.  The automatic stay prohibits most collection activities against the Dernicks and their property.  There are certain exceptions set forth in § 362(b) of the Bankruptcy Code.

When the Dernicks filed their bankruptcy case, all of their property became property of their bankruptcy estates.  They were allowed to claim certain property as exempt, and excluded from the bankruptcy estate.  Each filed their list of claimed exempt property.  Federal Rule of Bankruptcy Procedure 4003(b) requires that all objections to the claimed exemptions be filed not later than 30 days after the conclusion of the § 341 meeting of creditors.

### Brief History of The Debtors and Cause of The Debtors' Chapter 11 Filing

The Dernicks have been partners in the oil and gas exploration and production business for nearly thirty-seven years.  The Dernicks each own interests in Dernick Land, LLC ("Dernick Land"), an oil and gas exploration and production company.[1]  In 2010, the Dernicks formed a company called Dernick Encore, LLC ("Encore").  At that time, the Dernicks invited NorthStar Gas Ventures, LLC ("NorthStar") and the Russell Family Limited Partnership LLLP ("Russell") to participate in Encore as investors.

At inception, the Dernicks initially borrowed $2.5 million from Russell and NorthStar for a total $5.0 million, all of which they contributed to Dernick Land.  Dernick Land, in turn, contributed the same amount to Encore as Dernick Land's initial capital contribution for common units in Encore.  The notes had a three-year term, maturing in 2013.  In 2011, Encore Alliance LLC ("Alliance"), acquired an ownership interest in Encore as well, and also loaned $2.1 million to the Dernicks, all of which was in turn infused into Dernick Land and then into Encore as an additional capital contribution to avoid the dilution of Dernick Land's percentage interest in Encore.

---

[1]  S. Dernick owned a 35.61% interest and David Dernick owned a 28.69% interest in Dernick Land through January 5, 2016.  After January 5, 2016, S. Dernick owned a 55.38% and David Dernick owned a 44.61% interest.  In addition, the Dernicks were officers of Encore.

2

For Dernick Land's capital contributions to Encore for common units, the Dernicks together ultimately borrowed a total of $12.188 million from the three capital partners: $2.5 million from NorthStar; $7.588 million from Russell; and $2.1 million from Alliance (in aggregate, the "Three Lenders").

The Dernicks anticipated that the Three Lenders would agree to extend the maturity date for the promissory notes until Encore monetized its properties. However, in April 2013, the Three Lenders would only agree to amended and revised promissory notes with an interest rate of 18% and a January 5, 2016 maturity date ("Revised Notes").

The Revised Notes provided in part that "Absent an election by Payee to have less than its entire outstanding balance due converted immediately following the Maturity Date, any outstanding principal and interest due shall be automatically converted into additional Member Interests in Dernick Encore to be transferred out of Dernick Land's ownership interest…"

The Debtors position, which Russell, NorthStar and Encore dispute, is as follows: No elections were made by the Three Lenders prior to the maturity date of the notes, so on January 6, 2016, Dernick Land's entire 35% common unit ownership in Encore was to be transferred to the Three Lenders. Therefore, after January 6, 2016, Dernick Land no longer owned any of its 35% interest in Encore, and the Dernicks satisfied their obligations in full under the Revised Notes. Despite Dernick Land no longer owning any of its 35% interest in Encore after January 6, 2016, the Dernicks, on behalf of Dernick Land, agreed at the request of Russell, NorthStar, Alliance and Benefit Street Partners ("BSP"), Encore's merchant bank, for Dernick Land to continue to be the managing member of Encore.  Upon Dernick Land ceasing to own its 35% interest in Encore, BSP notified Encore that pursuant to the terms of the BSP loan to Encore, if Dernick Land were to resign as managing member of Encore, then BSP would "call" all of its loan to Encore, hence requiring Encore to immediately repay the loan in full.  At that time, Encore owed approximately $40.7 million to BSP and Encore did not have the liquidity to repay the loan.  It was agreed that Dernick Land was to be compensated monthly for the services it performed, but to date it has not been compensated by Encore for the period of March 1, 2016 through February 28, 2017 for which Encore agreed to pay approximately $2.76 million to Dernick Land in management fees and the reimbursement of working capital loans that Dernick Land had made to Encore to pay certain Encore G&A expenses.  As a result of this non-payment, Stephen Dernick, his brother David, and all other employees of Dernick Land have not been paid their full salaries earned for the period March 1, 2016 through February 28, 2017.

The BSP loan was retired in full in March 2017, and shortly thereafter in April 2017, Russell and NorthStar each sued the Dernicks separately in federal district court in the Southern District of

3

Texas.[2] alleging that the 35% ownership transferred from Dernick Land to Encore had zero value and that the Dernicks still owed the full principal and interest related to the loans.

Russell's lawsuit was assigned to Judge Harmon and NorthStar's lawsuit to Judge Hittner. During discovery in Judge Hittner's court, the Debtors retained an expert witness who valued the Encore common units ("Encore Units") transferred by Dernick Land at $23.4 million, effective January 5, 2016, the maturity date of the Revised Notes.  On that same maturity date, the two Dernick brothers owed the Three Lenders approximately $21.1 million in principal and interest.  The expert report also valued the Encore Units transferred by Dernick Land at $26.6 million, effective the date that the BSP loan to Encore was retired in March 2017. The Creditor Entities, as defined below, dispute this valuation and the expert report's validity.

In March 2018, Judge Harmon consolidated both lawsuits into her court, and on March 31, 2018, only a few weeks later, and without any discovery performed for the Russell lawsuit, she issued a Summary Judgment in favor of the Plaintiffs, ruling that the Encore Units had a zero value, and awarded Russell and NorthStar the entire original principal amount borrowed plus accrued interest through the Judgment date, for a total $26.8 million.  No credit or value was given to the Encore Units kept by Russell and NorthStar.  As a result of the District Court's Judgment (which the Debtors believe are erroneous and has been appealed), the zero valuation has resulted in the 35% of Encore owned by Dernick Land being split 50/50 Russell and NorthStar.  In other words, Debtors assert that NorthStar and Russell received and retained all of the Encore Units valued at $23.4 million in January 2016 plus were awarded in the judgment an additional $26.8 million for a combined amount of $50.2 million on only $10.088 million loaned in aggregate by Russell and NorthStar. Russell and NorthStar dispute this assertion.

The Dernicks have appealed the Judgments against them by NorthStar and Russell.

After the Judgments were entered on March 31, 2018, NorthStar almost immediately pursued collection from the Dernicks. NorthStar obtained writs of garnishment on April 24, 2018 and April 25, 2018. This action left the Dernicks with limited funds, even for living expenses. The bankruptcy cases ensued.

**Mediated Settlement Agreement**

---

[2]    Case Nos. 4:17-cv-01230 and 4:17-cv-01266.

The Debtors have been in bankruptcy since May, 2018.  For nearly two years the Debtors and the Creditor Entities have litigated the Legal Disputes through dozens of contested hearings and matters in the Bankruptcy Court.  Since the Bankruptcy was filed, the Debtors and the Creditor Entities filed numerous lawsuits against each other in the Bankruptcy Court.

On November 25, 2019, the Debtors, the Creditor Entities and related parties entered into a global Mediated Settlement Agreement (the "Mediated Settlement Agreement") which resolved all pending matters between the parties.

The Bankruptcy Court approved the Mediated Settlement Agreement which is attached as Exhibit A, and described in detail throughout this Chapter 11 plan:

i) The Plan will create the SD/DD Unsecured Creditor Trust (the "Trust") that will receive a total of at least $5,972,500.00, payable over time.

ii) On the Effective Date, Riley Exploration Permian, LLC~~The Confirmation Order will provide that Riley~~ is ordered to distribute all dividends and distributions payable to any of the Dernick Entities~~all cash dividends and cash distributions to be paid~~ solely to the Trustee of the Unsecured Creditors' Trust~~Trust~~.

iii) The Trust will have a first priority lien on 100% of the Riley Interests which are owned by any of the Dernick Entities for a limited period of time in order to ensure payment.[3]

iv) The Trustee of the Trust will distribute funds pursuant to the terms of the attached Mediated Settlement Agreement – Exhibit A.

The above summary of the Mediated Settlement Agreement is for informational purposes only and is entirely conditioned on and subject to the Mediated Settlement Agreement itself, which is fully incorporated into the Plan as if fully set forth.

## II.    DEFINITIONS

Except as expressly provided herein, or unless the context otherwise requires, the terms set forth in this Article II shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

**2.1**    "**Administrative Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code §

---

[3] The Creditor Entities assert the Riley Units are property of the Debtors' Estates, however those claims are released by virtue of the Mediated Settlement Agreement and confirmation of the Debtors' Plan.

507(a)(1), including, but not limited to, Fee Claims.

2.2 "**Allowed Amount**" means the amount of any Allowed Claim.

2.3 "**Allowed Claim**" means a Claim or portion thereof against the Debtors allowable under the Bankruptcy Code to the extent that (i) a proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if an objection is filed, if such Claim is allowed by a Final Order, unless otherwise provided in this Plan, or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, such Claim is allowed by a Final Order.

2.4 "**Allowed Secured Claim**" means a Secured Claim that becomes an Allowed Claim.

2.5 "**Allowed Unsecured Claims**" means all Allowed Claims other than (i) Allowed Secured Claims; (ii) Claims described under Sections 502(i), 503, and 507 of the Bankruptcy Code; and (iii) Claims of the Debtors.

2.6 "**Assets**" means all of the right, title, and interest of the Debtors or Estates in and to scheduled property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property), including any claim or Cause of Action.

2.7 "**Available Cash**" means all Cash that the Debtors or Estates hold as Assets on the Effective Date and any Cash contributed by any other party to fund payment required under the Plan.

2.8 "**Avoidance Actions**" means all statutory causes of action preserved for the Estate under Bankruptcy Code §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, and 724(a) that the Debtors or the Estates may have against any person.

2.9 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

2.10 "**Bar Date**" is September 26, 2018, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any proof of claim may not be timely filed, except certain claims held by governmental agencies.

2.11 "**Beneficiaries**" means, collectively, holders of Allowed Class 3 Unsecured Claims under the Plan.

2.12 "**Beneficial Interest**" means the share of beneficiary interests in the Trust distributed Pro Rata to holders of Allowed Class 3 Unsecured Claims under the Plan.

2.13 "**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

2.14 "**Cash**" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

2.15 "**Chapter 5 Claims**" means all claims and causes of action arising under Sections 541, 542, 543, 544, 545, 546, 547, 548 and 549 of the Bankruptcy Code.

2.16 "**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

2.17 "**Class**" means any class into which Claims are classified pursuant to Section 6.2 of the Plan. Each subclass of a class shall be treated as a separate class.

2.18 "**Confirmation**" means the entry by the Bankruptcy Court of the Confirmation Order.

2.19 "**Confirmation Date**" means the date on which the Order confirming this Plan is entered by the Court.

2.20 "**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtors will seek Confirmation of this Plan.

2.21 "**Confirmation Order**" means the Order confirming this Plan, which pursuant to the Mediated Settlement Agreement ¶ 17, the Dernick Entities agree will order Riley to distribute the REP Receipts to the Trust.

2.22 "**Contested**" when used with respect to a Claim, means a Claim against the Debtors as to which an objection has been timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

2.23 "**Creditor Entities**" means collectively – (i) David H. Russell Family Limited Partnership LLLP, (ii) David H. Russell, individually, (iii) Dernick Encore, LLC, (iv) Northstar Gas Ventures, LLC, and (v) Robert L. Carson, individually and as manager of Dernick Encore, LLC, and as manager of Northstar Gas Ventures, LLC.

2.24 "**Dernick Entities**" means collectively – (i) the Bankruptcy Estate of Stephen H. Dernick, (ii) the Bankruptcy Estate of David D. Dernick, (iii) the Stephen Harry Dernick Trust, (iv) the David Dwight Dernick Trust, (v) Stephen H. Dernick individually, and as trustee, and (vi) David D. Dernick individually, and as trustee.

2.25 "**Disclosure Statement**" means the Disclosure Statement included as part of this Plan.

2.26 "**Disputed**" when used with respect to a Claim has the same meaning as Contested.

2.27 "**Effective Date**" means the first Business Day after (a) the date the Confirmation Order becomes a Final Order; and (b) all conditions specified in this Plan have been satisfied or waived. The Debtors shall file a Notice Of Effective Date notifying all parties-in-interest of the Effective Date.

2.28 "**Estate Property**" mean Assets belonging to either Debtor's Estate.

2.29 "**Estate(s)**" in the singular means the respective Debtor's bankruptcy estate and the

plural both Debtors' bankruptcy estates created in these Chapter 11 cases under § 541 of the Bankruptcy Code.

2.30 "**Final Order**" means an order, ruling, or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that: (a) is in full force and effect; (b) is not stayed; and (c) is no longer subject to review, reversal, vacatur, modification, or amendment, whether by appeal or by writ of certiorari; provided that the possibility of a motion under Rules 50 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in such other court of competent jurisdiction) may be filed relating to such order, ruling, or judgment shall not cause such order, ruling, or judgment not to be a Final Order.

2.31 "**Lien**" means any charge against or interest in property of the estate to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, deed of trust, mortgage, and property tax lien.

2.32 "**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

2.33 "**Riley**" or "**REP**" refers to Riley Exploration Permian, LLC and its successors and assigns.

2.34 "**REP Interests**" refers to 100% of the Dernick Entities interests in Riley, including all property, assets or value received in connection with the Dernick Entities interest in Riley or its acquirer, successors or assigns.

2.35 "**REP Liens**" refers to the first priority lien granted to the Trust on the REP Interests.

2.36 "**REP Receipts**" refers to all dividends and distributions~~all cash dividends and cash distributions~~ paid on account of any REP Interest, as well as any additional funds paid to the Trust by any of the Dernick Entities~~other entity~~.

2.37 "**Secured Claim**" means a Claim to the extent secured by a Lien on property of the Estates, the amount of which is equal to or less than the value of the estates interest in such property.

2.38 "**Spendthrift Trusts**" means collectively the Stephen Harry Dernick Trust (Stephen H. Dernick, trustee and beneficiary) and the David Dwight Dernick Trust (David D. Dernick, trustee and beneficiary) and their successors and assigns.

2.39 "**Trust Assets**" mean, together (i) the REP Receipts payable to any of the Dernick Entities~~, less that portion of the of the REP Receipts to be paid by the Trustee to the Stephen Harry Dernick Trust and the David Dwight Dernick Trust, or their designees,~~ pursuant to the Mediated Settlement Agreement, and (ii) the first priority lien on the REP Interests granted to the Unsecured Creditors Trust.

## III.  DESCRIPTION OF ASSETS

The Dernicks' filed schedules list and describe of all of their assets and liabilities.  Complete

copies of the schedules are available from the Clerk of the Court.

The Debtors' non-exempt assets, can be described as follows:

1. **Business, Trust and Entity Interests**. The Debtors' principal assets are their interests in the following entities, which are non-exempt assets of the Estate to be administered under the Plan (the "**Business Assets**").

   a. **Dernick Land LLC** – The S. Dernick Estate owns 55.39% of the ownership interests in Dernick Land, and the D. Dernick Estate owns 44.61%. Dernick Land, LLC is an entity through which the Dernicks have engaged in various activities, including pursuing oil and gas ventures. The Debtors' interest in Dernick Land is minimal, if anything.

   b. **Wimmer Royalty Corporation** – The S. Dernick Estate owns a 50% interest in Wimmer Royalty Corporation ("WRC"), and the D. Dernick Estate owns the other 50%. WRC is another entity through which the Dernicks have engaged in various oil and gas ventures. The Debtors value their WRC interests at $54,000.00.

   c. **Miscellaneous Entities** – The S. Dernick Estate also hold interests in Ponoka Petroleum Inc, SJDernick Properties Ltd., and SJDernick Management LLC. The D. Dernick Estate also hold interests in Davey Energy LLC., DDDernick Management Ltd., and DDDernick Properties, LLC. None of these entities holds any assets.

2. **Cash and Cash Equivalents**. As of the Petition Date, S. Dernick held approximately $4,800.00 in cash and $19,297.25 in bank account balances that were subject to pre-petition garnishment proceedings (the "S. Dernick Garnished Funds"). D. Dernick held approximately $1,716.35 in funds now held in a DIP account at Wells Fargo and $27.78 in bank account balances that were subject to prepetition garnishment proceedings (the "D. Dernick Garnished Funds" and together with the S. Dernick Garnished Funds, the "Garnished Funds"). The Debtors each initiated adversary proceedings to avoid the prepetition garnishment actions. The adversary proceedings were resolved by agreement of the parties and on July 30, 2019, the court entered an order dismissing the adversary proceedings and directing the Garnished Funds be dispersed to the Debtors. The garnishment related adversaries were then dismissed with prejudice. The funds belonging to the Stephen Harry Dernick Trust have been returned to the Trust. The funds belonging to Stephen Dernick, if not returned sooner, shall be disbursed and returned to Stephen Dernick upon Confirmation.

3. **Art and Jewelry**. Pursuant to the Debtor's Amended Schedule of Exempt Assets (Schedule C, Docket No. 213), S. Dernick values his non-exempt artwork at $58,000.00, guitar collection at $15,000.00 and watches and other jewelry at $30,000.00. The asserted value of S. Dernick's non-exempt assets totals $103,000.00. D. Dernick has the following non-exempt assets: Artwork $2,000.00; Books $50.00; Pictures $1,000.00; Antiques $500.00; Records, CDs and Fossil Rocks $500.00; and old DVDs $50.00 (collectively the "**Collectable Assets**").

4. **Accounts Receivable**. As of the Petition Date, the Dernicks assert they are owed the following amounts, which receivables are non-exempt assets:
   a. Alan Buckner $204,325.00 (S. Dernick);
   b. Deferred Salary from Dernick Land LLC $512,000.00 (S. Dernick);

    c.  Business Expenses from Dernick Land LLC $182,086.00 (S. Dernick);

    d.  Alan Buckner $167,175.00 (D. Dernick);

    e.  Deferred Salary from Dernick Land LLC $423,000.00 (D. Dernick);

    f.  Business Expenses from Dernick Land LLC $118,450.00 (D. Dernick)

**5.** **Assets which exemptions have been objected to by creditors**. On July 15, 2019, NorthStar and Encore filed an Objection to the Debtors' claimed exemptions and assert that the D. Dernick exceeded the statutory limit for exemptions. Pursuant to this Plan, and the Mediated Settlement entered into by the Parties to the Mediation, the Objection to Exemptions shall be denied and/or dismissed.

**6.** **Executory Contracts and Leases**. The Debtors' Schedules reflect no executory contracts or unexpired leases. To the extent any exist, they are rejected by this Plan.

**7.** **Claims and Causes of Action**. The Dernicks scheduled or asserted the following claims or potential causes of action that the Estate may have against the listed parties (included in the definition of "**Causes of Action**" above).

    a.  **Various torts and other claims and causes of actions** - Claims against Bryan Lawrence, Yorktown Partners, Riley Exploration Group, LLC, Riley Exploration Permian, LLC., Bobby Riley, Kevin Riley, Boomer Petroleum, LLC, BREA LLC, and others.

    b.  **Fraudulent Transfer Claims** - Fraudulent transfer claim against NorthStar and Encore regarding Units described above. Pursuant to the attached Mediated Settlement Agreement, all pending litigation against NorthStar and Encore shall be and are dismissed.

    c.  **Fraudulent Inducement Claims** — Debtors assert that Dernick Encore owes Dernick Land approximately $2.76 million for deferred management fees for the period March 2016 through February 2017, working capital loans and the unreimbursed out-of-pocket expenses that Dernick Land incurred on behalf of Encore. To the extent that Encore refuses to repay the $2.76 million owed to Dernick Land, the Debtors have a fraudulent inducement claim against Robert Carson for $2.76 million. These claims are disputed. Pursuant to the attached Mediated Settlement Agreement, all pending litigation against the Creditor Entities shall be and are dismissed. The Dernick Entities will cause Dernick Land to execute the releases that are contained, and as described, in this paragraph. With respect to Dernick Land's claims against Dernick Encore (which claims are denied by Dernick Encore), Dernick Land will retain its claims (if any) against Dernick Encore. The Dernick Entities and Dernick Land agree that Dernick Land releases Dernick Land will release each individual who is an owner, manager, officer, agent, director, attorney, or accountant (including without limitation Robert 1. Carson and David H. Russell) for Dernick Encore with respect to any claims held by Dernick Land against Dernick Encore.

    d.  **Garnishment Adversary** - Post-petition, the Debtors filed the following adversary proceedings: *David D. Dernick v. NorthStar Gas Ventures, LLC, et al.*, Adversary No. 18-03303 and *Stephen H. Dernick v. NorthStar Gas Ventures, LLC, et al.*, Adversary No. 18-03304 (collectively, the "Garnishment Adversaries"). In the Garnishment

Adversaries, the Debtors sought to avoid the prepetition Writs of Garnishment NorthStar obtained against the Garnished Funds. As noted above, the Garnishment Adversaries were resolved and dismissed with prejudice.

e. **The Judgment Appeal** - As detailed above, the Debtors filed a Notice of Appeal of the Final Judgment with the Fifth Circuit. Pursuant to the attached Mediated Settlement Agreement, the Appeal shall be dismissed.

f. **Stay Violation Litigation against NorthStar** - Violation of the automatic stay related to the garnishment proceedings in the Cause No. D-1-GN-18001888. The Adversary Proceeding was filed on June 17, 2019 in the Southern District of Texas Bankruptcy Court – Case No. 19-3541. Pursuant to the Mediated Settlement Agreement, the stay violation claims against NorthStar are released and those claims shall be and are dismissed.

g. **Other Potential Causes of Action** - In addition, the Estate may have Causes of Action, including, without limitation, claims for avoidance and recovery of fraudulent transfers against the following parties for any and all cash and interests each received from the Debtors prior to the Petition Date

      i. Alan C. Buckner

      ii. Dr. Robert G. Dernick

      iii. Christopher M. Bearrow

      iv. Dennis W. Bartoskewitz

      v. SJDernick Properties. Ltd.

      vi. DDDernick Properties, Ltd.

      vii. Foley Gardere

        • Causes of action include, but are not limited to, breach of fiduciary duties that stem for Foley Gardere's prior representation of the Debtors

      viii. Claims against Bryan Lawrence, Yorktown Partners, Riley Exploration Group, LLC, Riley Exploration Permian, LLC., Bobby Riley, Kevin Riley, Boomer Petroleum, LLC, BREA LLC, and others for various torts and other claims and causes of action.

      ix. Fraudulent transfer claim against NorthStar and Encore. Pursuant to the attached Mediated Settlement Agreement, all pending litigation against NorthStar and Encore shall be and is dismissed.

      x. Claims Regarding the Riley Interests Owned by The Debtors' Spendthrift Trusts:

        • The Debtors are the beneficiaries of the Spendthrift Trusts. The Spendthrift Trusts each have an interest in units of Riley Exploration Permian, LLC (the "Riley Units"). The Riley Units are not owned by the Debtors, and are therefore not property of the bankruptcy estates of the Debtors.

        • The Creditor Entities allege that the Riley Units are or should be property of the estate because, among other things, the Debtors transferred the Units to the Spendthrift Trusts. Pursuant to this Plan and the attached Mediated Settlement Agreement, these claims are released~~these~~

~~claims are dismissed, discharged, and released~~.

## 8. IV       How to Vote

Fill out and return the attached ballot (if you are entitled to vote) by the deadline, and in accordance with the other instructions in the enclosed order regarding voting and procedures.

### a. **Effect of Vote**

The Plan will be confirmed only if (1) it is accepted by each impaired class, or (2) it is accepted by at least one impaired class (without counting votes of "insiders," as defined by Bankruptcy Code § 101(31)) and the Bankruptcy Court determines that the Plan is "fair and equitable" as defined in Bankruptcy Code § 1129(b) to all rejecting classes of creditors; and (3) it meets all of the other legal requirements for confirmation. A class of creditors accepts the Plan if a majority in number and at least two-thirds (2/3) in dollar amount of the claims in that class are timely voted in favor of the Plan. *See* Bankruptcy Code § 1126(d).

### b. **Who May Object**

Even if you are not entitled to vote, you can object to Confirmation of the Plan if you believe that the requirements for Confirmation are not met (and if you are a party in interest in this Bankruptcy Case). For the deadlines and procedures to object, see the enclosed Order.

## 9. V.       Liabilities of the Debtors

**Administrative and Priority Claims**. The Debtors and the Estates will be liable for certain administrative and priority claims pursuant to Bankruptcy Code § 503(b) through the Confirmation Date, including professional fees to the Debtors' bankruptcy counsel, to the extent allowed. Finally, the Debtors owe ongoing quarterly fees to the U.S. Trustee. Before the Debtors pay any of the administrative expenses, the Bankruptcy Court will have determined the reasonableness of such fees and expenses. Debtors' former counsel, Reese Baker filed a Notice of Fees and Expenses at Docket No. 360 asserting total fees and expenses of $111,000.00 against the Debtors.  Baker has not requested that these fees be approved by the Court.  Debtor's current counsel, Walker & Patterson, P.C. estimates that it will be owed approximately $160,000.00 from the Debtors.

### STEPHEN DERNICK'S CLAIMS

i. **Ad Valorem Secured Claims**. Taxing authorities filed the following claims for 2018 *ad valorem* property taxes secured by the S. Dernick's homestead:
   a. Harris County et al. in the amount of $7,052.57 as set forth in Proof of Claim No. 1;
   b. Cypress Fairbanks ISD in the amount of $10,459.51 as set forth in Proof of Claim No. 2.; and
   c. Champions M.U.D. in the amount of $2,441.90 as set forth in Proof of Claim No. 13-1.

All *ad valorem* claims are asserted as fully secured.

ii.  **BB&T Secured Claim**. Branch Banking and Trust ("BB&T") filed Proof of Claim No. 3, asserting a claim in the amount of $705,654.31 as fully secured by the Homestead, with no arrearages as of the Petition Date. BB&T shall have an Allowed Secured Claim in the estimated amount of $705,654.31, with a post-petition arrearage of approximately $89,000.

iii.  **NorthStar Secured Claims**. NorthStar filed a Proof of Claim No. 7 based on the Final Judgment, secured by and up to the value of the Debtor's membership interests in Dernick Land pursuant to the Amended and Restated Pledge Agreement.  The Debtor's interest in Dernick Land has no value and is therefore an unsecured claim.  Therefore, NorthStar's claim is unsecured and included in the unsecured claims described below.

iv.  **Priority Claims**. As of the date of this Plan and Disclosure Statement, no parties have asserted Priority Claims against S. Dernick or his Estate.

v.  **Unsecured Claims**. The Bar Date in the S. Dernick Bankruptcy Case passed on September 26, 2018. A total of approximately $24,951,216.90 in timely unsecured claims are pending against the S. Dernick Estate as detailed below. Furthermore, Russell filed Proof of Claim No. 9 based on the Final Judgment, including a Secured Claim secured by and up to the value of the Debtors' membership interests in Dernick Land pursuant to the Amended and Restated Pledge Agreement, in addition to any remaining general unsecured claim as noted below.  The Debtors' interest in Dernick Land has no value, therefore Russell's claim is unsecured.

**DAVID DERNICK'S CLAIMS**

i.  **Ad Valorem Secured Claims.** Taxing authorities filed the following claims for *ad valorem* property taxes secured by the D. Dernick's homestead:
   a.  Harris County in the amount of $3,795.90 (POC #3);
   b.  Harris County (2019) in the amount of $ 3,795.90 (POC #16);
   c.  Cypress Fairbanks ISD in the amount of $5,480.64 (POC#4); and
   d.  Cypress Fairbanks ISD in the amount of $5,463.36 (POC#15).

   All *ad valorem* claims are asserted as fully secured.
   All property taxes will be paid in full by the Debtors.

ii.  **Ford Secured Claim.** Ford Motor Credit Company ("Ford") filed Proof of Claim No. 2, asserting a claim in the amount of $22,162.32, as fully secured by the D. Dernick's exempt vehicle, a 2015 Ford F150 Truck.

iii.  **Wells Fargo Secured Claim.** Wells Fargo Bank, N.A. ("Wells Fargo") filed Proof of Claim No. 7, asserting a claim in the amount of $314,972.88 as fully secured by the D. Dernick's homestead, with $229.74 in pre-petition arrears as of the Petition Date. Wells Fargo shall have an Allowed Secured Claim in the estimated amount of $314,972.88, with a post-petition arrearage claim in

the approximate amount of $80,000.00. Wells Fargo is also entitled to ongoing monthly mortgage payments in the amount of $3,416.68.

iv.    **Ally Financial Unsecured Claim.** Ally Financial ("Ally") filed a secured claim in the amount of $358,852.29 which was secured by D. Dernick's interest in a 2013 American Eagle mobile home ("Mobile Home"). Ally has since repossessed the Mobile Home and therefore Ally will be treated as an unsecured creditor, to the extent of any deficiency that becomes an Allowed Unsecured Claim.

v.    **NorthStar Secured Claims.** NorthStar filed Proof of Claim No. 7 based on the Final Judgment, secured by and up to the value of the Debtor's membership interests in Dernick Land pursuant to the Amended and Restated Pledge Agreement. The Debtors' interest in Dernick Land has no value and the claim is therefore an unsecured claim.

vi.    **Priority Claims.** As of the date of this Plan and Disclosure Statement, no parties have asserted Priority Claims against D. Dernick's Estate.

vii.    **Unsecured Claims.** The Bar Date in the D. Dernick Bankruptcy Case passed on September 26, 2018. A total of approximately $14,973.372.64 in timely unsecured claims are pending against the Estate as detailed below. Furthermore, Russell filed Proof of Claim No. 9 based on the Final Judgment, including a Secured Claim secured by and up to the value of the Debtors' membership interests in Dernick Land pursuant to the Amended and Restated Pledge Agreement, in addition to any remaining general unsecured claim as noted below. The Debtors' interest in Dernick Land has no value, therefore Russell's claim is also an unsecured claim.

**POTENTIAL CLASS 3 UNSECURED CLAIMS AGAINST EACH DEBTOR**.[4]

i.    **Filed Claims**. The following timely filed unsecured claims (including Secured Claims with collateral having a value less than the asserted Secured Claim as noted above with resulting significant unsecured amounts), each of which will be treated as Class 3 Claims to the extent they are Allowed Claims (as defined in this Plan):

| Claim Register No. | Claimant | Claim Amount |
|---|---|---|
| S.D. 4 | American Express National Bank | $15,705.93 |
| S.D. 5 | Barry Conge Harris LLP | $261,652.74 |
| S.D. 6 | Encore Alliance, LLC | $3,021,192.21 |
| S.D. 7 | NorthStar Gas Ventures, LLC | $3,723,091.92 |
| S.D. 8 | Dernick Encore, LLC | $6,464,836.81 |
| S.D. 9 | Russell Family Limited Partnership, LLLP | $11,417,740.29 |

---

[4] The list and analysis of ¶9(b) in no way indicates or stipulates to the allowance of any of the identified claims, with all claims subject to objection before and after confirmation of this Plan, except as may otherwise be agreed to or ordered.

14

| S.D. 12 | Ferrari Financial Services | $14,460.08 |
| D.D. 5 | Discover Bank | $8,254.93 |
| D.D. 6 | American Express | $768.04 |
| D.D. 9 | Barry Conge Harris, LLP | $0.00[5] |
| D.D. 10 | American Express | $646.55 |
| D.D. 11 | Encore Alliance, LLC | $2,440,852.57 |
| D.D. 12 | NorthStar Gas Ventures, LLC | $3,033,156.20 |
| D.D. 13 | Dernick Encore, LLC | $0.00[6] |
| D.D. 14 | Russell Family Limited Partnership, LLLP | $9,218,782.35 |
| **Total Filed Unsecured Claims** | | **$39,621,140.62** |

ii. **Scheduled Claims**. In addition to the above filed proofs of claim, the Debtors scheduled the following unsecured claims as not disputed, contingent or unliquidated on his Schedule F, each of which will be treated as Class 3 Claims to the extent they are Allowed Claims (as defined in this Plan) and not duplicative of or replaced by a filed proof of claim:

| Creditor | Unsecured Claim Amount |
|---|---|
| (S.D.) Citibank/Sears | $187.00 |
| (S.D.) Stout Risius Ross | $46,750.00 |
| (S.D.) VISA (Bank of America) | $60.00 |
| (D.D.) PayPal Mastercard | $7,514.12 |
| (D.D.) Stout Risius Ross | $36,000.00 |
| (D.D.) VISA (Bank Of America) | $3,103.49 |
| **Total Scheduled Claims** | **$93,614.61** |

## LIQUIDATION ANALYSIS

Bankruptcy Code § 1129(a)(7) requires that a Chapter 11 plan must provide at least as much value to each of the Debtors' creditors as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code. In a Chapter 7, the Debtors' primary assets would be liquidated in a manner similar to that as proposed under this Plan; however, Bankruptcy Code Sec. 1129(a)(15) does not apply in a Chapter 7 case. Accordingly, the Plan provides creditors the opportunity to share in the Debtors' future income from the limited assignment of the income stream generated by the Riley Units which will greatly exceed both the assets and recovery available to creditors in a chapter 7. Thus, the Plan satisfies the requirements of Code § 1129(a)(7).

## THE PLAN

### 6.1   Summary of Plan

---

[5] It is alleged that the Debtors are both liable to Barry Conge Harris, LLP for legal fees, however the claim, if allowed, is only entitled to one satisfaction.

[6] It is alleged that the Debtors are both liable to Dernick Encore, however the claim, if allowed, is only entitled to one satisfaction.

b.       The Plan provides for the payment of the Debtors' priority and secured claims, while also creating an unsecured creditor trust for distributions to unsecured creditors with Allowed Claims.   The SD/DD Unsecured Creditor Trust (the "Trust") and its distribution scheme is the result of the Mediated Settlement Agreement reached between the Debtors and their bankruptcy estates, and the trustees of the Spendthrift Trusts on one hand, and David H. Russell Family Limited Partnership LLLP, David H. Russell, Dernick Encore LLC, NorthStar Gas Ventures, LLC, Robert L. Carson (individually and as manager of Dernick Encore, LLC and Manager of NorthStar Gas Ventures, LLC).   The Mediated Settlement Agreement as approved by the Bankruptcy Court is attached hereto, and the terms are incorporated into the Plan as if fully set forth herein.  In general terms, all dividends and distributions all cash dividends and cash distributions payable by REP on account of the REP Interests to any of the Dernick Entities will be paid solely to the Trustee of the Trust until a specified amount is received by the unsecured creditors.  All litigation between the Dernick Entities and the Creditor Entities will be dismissed, including  pending appeals, claim objections and objections to the Debtors' exemptions, with the exception of pending claims that Dernick Land will pursue against Dernick Encore.    The Dernick Entities will cause Dernick Land to execute the releases that are contained, and as described, in this paragraph. With respect to Dernick Land's claims against Dernick Encore, Dernick Land will retain its claims (if any) against Dernick Encore. Dernick Land hereby releases will release each individual who is an owner, manager, officer, agent, director, attorney, or accountant (including without limitation Robert 1. Carson and David H. Russell) for Dernick Encore with respect to any claims held by Dernick Land against Dernick Encore.

The table below summarizes the estimated range of potential recoveries for creditors with Allowed Claims under the Plan:

| Class | Class Description | Recovery range |
|-------|------------------|----------------|
| 1 | Ad Valorem Secured Claims | Paid 100% by Debtor |
| 2 | Secured Claims | Paid 100% by Debtor |
| 3 | Unsecured Claims | $5,972,500.00 - $6,972,500.00 |
| 4 | Debtor | All Other Estate Property |

### 6.2 Classification of Claims and Interests

In accordance with Bankruptcy Code § 1123(a)(1), all Claims (except Administrative Claims and Priority Tax Claims) are placed in classes described below for all purposes, including voting on, confirmation of, and distributions under this Plan. Administrative Claims and Allowed Priority Tax Claims have not been classified and are addressed below.

**a.** **Class 1 – Allowed Ad Valorem Secured Claims**. Class 1 consists of the Allowed Secured Claims for 2018 *ad valorem* property taxes. The Debtors shall pay the Allowed Claims directly, in full with statutory interest within six months of the Effective Date.

**b.** **Class 2 – Allowed Secured Claims**. Class 2 consists of Allowed Secured Claims. Allowed Secured Claims shall retain their prepetition liens, and shall be paid pursuant to the prepetition contractual terms, with pre and post-petition arrearages as of the Effective Date cured by the Debtors making 60 equal monthly payments directly to the Allowed Secured Claim Holder with an arrearage. The first payment will be due within 30 days of the Effective Date.

**c.** **Class 3 – Allowed Unsecured Claims**. Class 3 consists of Allowed Unsecured Claims estimated to total approximately $40,000,000.00. Each holder of an Allowed Unsecured Claim shall receive a Beneficial Interest in the Trust in full satisfaction of their Claim. Beneficial Interests shall be allocated to correspond to the Allowed Unsecured Claim Holder's Pro Rata interest of Class 3, based upon the amount of the Allowed Claim.

**d.** **Class 4 – the Debtors**. The Class 4 Claim consists of the Debtors. The Debtors shall retain all Estate Property~~property~~ not otherwise provided for in this Plan.

### 6.3 Treatment of Unclassified Claims, Administrative Claims, Priority Claims, and U.S. Trustee Fees

**a.** **Administrative Claims**. As further described in Section 6.5, each holder of an Allowed Administrative Claim under Bankruptcy Code § 503 will be paid in full, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**b.** **Priority Tax Claims**. Any holder of a Priority Tax Claim within the meaning of Bankruptcy Code § 507(a)(8) will be paid in accordance with the provisions of Bankruptcy Code § 1129(a)(9)(C) and (D), unless an agreement has been reached otherwise.

**c.** **United States Trustee Fees**. All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any U.S. Trustee Fee owed on or before the Effective Date of the Plan will be paid on the Effective Date from the Available Cash.

### 6.4 Claims and Interests Impaired Under the Plan

Claims in Classes 1 through 4 are Impaired under the Plan within the meaning of Bankruptcy Code § 1124.

### 6.5 Treatment of Administrative Claims

a.      **Administrative Claims in General**. Each holder of an Administrative Claim shall receive either: (i) with respect to Allowed Administrative Claims as of the Effective Date, the amount of such holder's Allowed Claim in one cash payment on the Effective Date from the Debtors' Available Cash; or as otherwise agreed between the Debtors and the administrative claimant; ii) with respect to Administrative Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim in one cash payment within thirty (30) days of the date the Administrative Claim is allowed by the Court, from the Available Cash; or as otherwise agreed between the Debtors and the administrative claimant.  As discussed above, Debtors' former counsel, Reese Baker has not filed a Fee Application in this case.  Debtor's current counsel, Walker & Patterson, estimates a total of $160,000.00 in attorney's fees, to be split equally between Stephen Dernick's and David Dernick's Chapter 11 case, which are being jointly administered.

b.      **Fee Claims**. Each professional person whose retention with respect to the Debtor's case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Claim (a "Fee Claim") shall be required to file with the Bankruptcy Court a final fee application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely any such application as required shall result in the Fee Claim being forever barred and discharged. A Fee Claim, with respect to which a Fee Application has been properly filed, shall become an Administrative Claim only to the extent allowed by Final Order. Fee Claims shall be paid either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment on the Effective Date, from the Available Cash; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Available Cash within thirty (30) days after such claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtors and such holder.

c.      **Administrative Claims Bar Date**. Any other person or entity who claims to hold an Administrative Claim (other than a Fee Claim) shall be required to file with the Bankruptcy Court an application within thirty (30) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this Section 6.5(c) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Claim with respect to which an application has been properly filed and to which no timely objection has been filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

d.      **Quarterly Fees**. All fees payable under 28 U.S.C. § 1930 shall be paid by the Debtors in full on the Effective Date, or as they come due. Quarterly fees shall continue to accrue and be paid until this Bankruptcy Case is closed.

### 6.6   Treatment of Claims Under the Plan

All Claims classified under the Plan shall be treated and paid as follows:

a.      **Class 1 Claims (Secured Ad Valorem Taxes)**. All property taxing authorities with Liens on the Debtors' property shall retain their statutory Liens that secure prepetition and post-petition *ad valorem* property taxes and their statutory priority until all amounts owed are paid

in full. Allowed Secured Ad Valorem Tax Claims will be paid in full directly by the Debtors. The Debtors shall pay this amount directly, in full with statutory interest within six months of the Effective Date, or alternatively, by BB&T or Wells Fargo, the Debtors' mortgage companies, from a tax escrow the Debtors fund on a monthly basis through the payment of their mortgage. Allowed Secured Ad Valorem Tax Claims shall accrue interest under applicable non-bankruptcy law pursuant to §511 of the Bankruptcy Code from the Petition Date through the date such claim is paid in full. The holder of a Secured Ad Valorem Tax Claim for any tax year from 2019 and thereafter shall retain all rights and remedies for payment thereof in accordance with applicable non-bankruptcy law. **The Class 1 Claims are Impaired and are entitled to vote on the Plan.**

### b.        Class 2 Allowed Secured Claims.

(Stephen Dernick) **BB&T** shall have an Allowed Secured Claim in the estimated amount of $705,654.31, with a pre and post-petition arrearage of approximately $89,000.00. The arrearage will be cured by Stephen Dernick making 60 equal monthly payments directly to BB&T. Stephen Dernick will also continue to make ongoing monthly mortgage payments directly to BB&T. The first arrearage payment will be made within 30 days of the entry of the Confirmation Order of this Chapter 11 plan, and each month thereafter for sixty months. The first ongoing mortgage payment will also begin within 30 days of the entry of the Confirmation Order for this Chapter 11 plan. The Secured Claim of BB&T results from a mortgage executed by Stephen Dernick in favor of BB&T and is secured by a Lien on his homestead. Stephen Dernick shall timely perform all payment and other obligations pursuant to his contractual agreement with BB&T. The legal, equitable, and contractual rights of BB&T shall remain unchanged with respect to the Debtor's Homestead. BB&T shall retain its Lien on the Debtor's Homestead until paid in full.

(David Dernick) **Wells Fargo** shall have an Allowed Secured Claim in the estimated amount of $314,972.88, with a pre and post-petition arrearage in the approximate amount of $80,000.00. The arrearage will be cured by making 60 equal monthly payments. The first payment toward the approximate $80,000.00 arrearage amount will be made within 30 days after confirmation of the Debtors' chapter 11 plan, and each month thereafter for sixty months. The Debtor will resume making the regular monthly mortgage payment of $3,416.64 directly to Wells Fargo with the first payment coming due within 30 days of confirmation of the Chapter 11 plan. The Secured Claim of Wells Fargo results from a mortgage executed by the Debtor in favor of Wells Fargo and is secured by a Lien on the Debtor's Homestead. The Debtor shall timely perform all payment and other obligations pursuant to his prepetition contractual agreement with Wells Fargo. The legal, equitable, and contractual rights of Wells Fargo shall remain unchanged with respect to the Debtor's Homestead. Wells Fargo shall retain its Lien on the Debtor's Homestead until paid in full.

**Any Defaults under future payment to Wells Fargo or BB&T shall be governed by the prepetition contract entered into by the Debtors with these creditors.**

(David Dernick) **Ford Motor Credit** shall have an Allowed Secured Claim in the estimated amount of $22,162.32. The Debtor shall timely perform all payment and other obligations pursuant to his prepetition contractual agreement with Ford. The legal, equitable, and contractual rights of Ford shall remain unchanged. Ford shall retain its Lien on the Debtor's Ford F150 Truck until paid in full.

**The Class 2 Claims are Impaired and are entitled to vote on the Plan.**

c.        **Class 3 Claim (Unsecured Claims)**. Holders of Allowed Unsecured Claims shall receive *Pro Rata* Beneficial Interests in the SD/DD Unsecured Creditor Trust in full satisfaction of their Allowed Claims.  A copy of the Trust Agreement is attached hereto.  **The Class 3 Claims are Impaired and are entitled to vote on the Plan.**

d.        **Class 4 Claims (Debtors)**. All ~~Estate Property~~property not otherwise dealt with or provided for in this Plan shall revest in the respective Debtor, free and clear of any and all liens, claims and encumbrances, upon ~~confirmation~~Confirmation of this Plan.

### 6.7    Means for Implementation of the Plan

The attached Mediated Settlement Agreement is incorporated into this Plan in full.

The SD/DD Unsecured Creditor Trust (the "Trust") shall make payments required under this Plan to holders of Beneficial Interests, which are the Allowed Claims in Class 3 as follows:

a.        **Plan/Trust Funding**. As of the Effective Date, the Dernick Entities agree and the Confirmation Order (pursuant to Mediated Settlement Agreement ¶ 17) will order REP to distribute any and all REP Receipts payable to any Dernick Entities to the Trustee of the Trust.  The Trust will also be granted a first priority lien on 100% of the REP Interests.

b.        **Selection of Trustee**. The Trustee of the Trust will be selected by majority vote of the Holders of Allowed Class 3 Claims. The Trustee must be a member of the Chapter 7 trustee panel in the Southern District of Texas. The majority vote will be based on the dollar amount of claims held and actually voted, and a voting ballot will be sent with the disclosure statement.  The only Trustee nominated at this point is Christopher Murray.

c.        **Distribution of Funds**. The Trustee will distribute the REP Receipts as specified in The Mediated Settlement Agreement, and as is restated as follows[7]:

i.        From all funds received by or escrowed for the benefit of the Trustee on or before March 31, 2020, $27,500.00 to the holders of Beneficial Interests, Pro Rata on account of their Allowed Class 3 Claims.

ii.       From the REP Receipts and any other funds coming into the possession of the Trust from the Dernick Entities, received~~any source~~ after April 1, 2020, the Trustee shall distribute the funds as follows:

1.    First, 25% to the Dernicks jointly, in the amounts and to the persons as directed by the Dernicks.

2.    Second, $55,000.00 per calendar quarter (distributed not later than the last day of each calendar quarter starting on June 30, 2020) to the holders of Beneficial Interests, Pro Rata.

---

[7] Any conflict between the provisions of this Plan and The Mediated Settlement Agreement shall be governed by the **Mediated Settlement Agreement**.

      3.      Third, to the administrative costs of the Trust.

      4.      Fourth, from any remaining REP Receipts, the difference between $62,500.00 per quarter and the amount paid under paragraph 6.7 (c)(ii)(1) above, [8] to the Dernicks jointly, in the amounts and to the persons as directed by the Dernicks.

      5.      Fifth, from any remaining funds, to Stephen H. Dernick and David D. Dernick, or their designees, an amount equal to:

- The Dernick's marginal tax rate,
- multiplied by any taxable dividends or taxable distributions received from Riley in that quarter,
- multiplied by 75%.

      6.      Sixth to reserves to be held by the Trust.

iii.      For purposes of paragraph 6.7(c)(ii)(5) above, the Dernicks' marginal tax rate shall be calculated as the marginal tax rate on David Dernick's current filed federal income tax return plus the marginal tax rate on Stephen Dernick's current filed federal income tax return, divided by 2. The marginal tax rate shall be the rate that is applicable to taxable dividends or taxable distributions received from Riley.

iv.      In any calendar quarter in which the Trust received inadequate REP Receipts to make the distributions shown in subparagraph 6.7(c)(ii), the Trustee must use the reserves held in the Trust to fund the amounts shown in paragraph 6.7(c)(ii)(2) and (3) above.

v.      The funds that are payable to any of the Dernick Entities by the Trust shall be promptly distributed by the Trustee no later than ten (10) calendar days from the Trustee's receipt of such funds. The Trustee shall make separate wire transfers of the funds due each of the Dernick Entities pursuant to wiring instructions provided to the Trustee after the execution of the Trust Agreement.

    **d.**    **Security and Default**. The Trust will hold and administer the REP Liens for a specified time period. The REP Liens shall be secured in accordance with applicable law and perfected. The REP Liens may be enforced as follows[9]:

i.      The REP Receipts shall be paid to the Trust as set forth above in this Plan.

---

[8] For the avoidance of doubt, the formula in par. 6.7(c)(ii)(4) is:  $62,500 minus (the amount paid under par. 6.7(c)(ii)(1)).

[9] Specific treatment and enforcement of the lien is governed by the terms of The Mediated Settlement Agreement which are incorporated herein, and any conflict between this Plan and The Mediated Settlement Agreement shall be governed by the Mediated Settlement Agreement.

~~Notwithstanding anything to the contrary contained in this Plan, the Order Confirming this Plan, or the Mediated Settlement Agreement, the Dernick Entities, or their designees, shall retain the right to cover any shortfall in payments to the Trust, and shall be entitled to prepay, in whole or in part, (subject to the terms of the Mediated Settlement Agreement) the obligations contained in the Mediated Settlement Agreement.~~

ii.  If the Trust does not have adequate funds to timely make all of the payments set forth in paragraph 6.7(c)(ii)(2) (or such other funds as provided under paragraph 6.7(c)(ii)(6)), then the Trust must give a 30 day notice of default. It will not be a defense to an allegation of a default that the Trust does not have adequate funds or did not receive a distribution from Riley. For the purposes of clarity, it will not be a default if the Trust fails to make a distribution under paragraph 6.7(c)(ii)(2) above if the Trust held adequate funds to timely make the distribution, but failed to do so. It will be a defense if no default has occurred. The notice of default will be sent to up to two entities as directed jointly by the Dernick Entities. Any direction of the identity of the two entities will be effective 14 days after delivery to the Trust, and may provide for notice by email and by certified mail to each of the two entities. If the parties agree, notice provisions may be included in the Trust Agreement, which will control. The notice of default will be sent to Stephen Dernick via email at shd@dernickco.com, and via certified mail to 13610 Bermuda Dunes Court, Houston, Texas 77069. The notice of default will also be sent to David Dernick via email at ddd@dernickco.com, and via certified mail to 6014 Pebble Beach Drive, Houston, Texas 77069.

iii.  During the 30-day cure period provided in paragraph 6.7(d), the Dernick Entities may (i) cure the default; or (ii) transfer 80% of all of the REP Liens' pledged collateral to the Trust. The Trust will provide such documents to the Dernick Entities that the Trust reasonably believes are necessary to effectuate the transfer. Within 30 days of receipt of such execution documents, the Dernick Entities must execute and deliver the documents to the Trust. If the documents are not so executed in a good and indefeasible manner and without protest, then the Trust may (i) exercise its state law rights against 100% of the collateral; or (ii) obtain an order from the Bankruptcy Court that transfers 100% of the collateral to the Trust; or (iii) both (i) and (ii).

~~iii.~~iv.  The Dernick Entities, or their designees, may prepay, in whole or in part, and without penalty (subject to the terms of the Mediated Settlement Agreement) the obligations contained in the Mediated Settlement Agreement.

e.  **Termination and Winding Up**. The Trust shall terminate on the one year

anniversary of the date on which:

    i.    the amounts distributed under paragraph 6.7(c)(ii)(2):

        1.    If on or before March 31, 2022, equal or exceed $6,972,500.00; or

        2.    If on or after April 1, 2022, equal or exceed $5,972,500.00, then

        3.    The Trust will release all of its liens and inform Riley that no further dividends or distributions are to be made to the Trust.

    ii.    The Trust becomes the owner of the 80% of the REP Interests (or the 100% of the REP Interests if so required), the Dernick Entities will be absolved of all further payment obligations and the Trust will be absolved of all further payment obligations to the Dernick Entities.

    iii.    The 80% of the REP Interests is transferred to the Trust, the Trust will release its lien on and rights under the remaining 20% REP Interests and will so notify Riley.

**f.**    **Miscellaneous Provisions Governing the Trust**.

    i.    In any dispute concerning whether any party has violated any Order of the Bankruptcy Court, the prevailing party will be awarded its reasonable attorney's fees. Additionally, the Bankruptcy Court may award damages for any violation, including a reduction in claims if appropriate.

    ii.    If Riley makes a general distribution of funds, but suspends that general distribution to the Dernicks, this paragraph will apply. If the Dernicks believe in good faith that the suspension as to the Dernicks was precipitated by or at the direction of a beneficiary of the Trust after November 25, 2019 (or any affiliate or person in control of or controlled by such a beneficiary), the Dernicks may commence a proceeding before the Bankruptcy Court.

        1.    In any such proceeding, the burden of proof will be on the Dernicks.

        2.    During such proceeding, the Trust will not take action under paragraph 6.7(d) until the proceeding before the Bankruptcy Court has concluded.

        3.    The Bankruptcy Court may order any appropriate relief, including without limitation those remedies set forth in subparagraph 6.7(f)(i).

        4.    If the Dernicks prevail in the proceeding, it will not have been a default for payments not

to have been made under paragraph 6.7(c)(ii)(2) during the period of the suspension if the proceeding under this paragraph is commenced during a cure period identified in paragraph 6.7(d).

b. The Dernick Entities' obligations under this Plan and the treatment provided under Class 3 are in full and final satisfaction of all claims by the Creditor Entities. The Dernick Entities will not file a claim objection against the unsecured claims asserted by the Creditor Entities, which will be treated exclusively as set forth in this Plan and the Mediated Settlement Agreement. All pending claim objections filed by the Dernick Entities or the Creditor Entities against any of the other will be withdrawn at confirmation, and will not be prosecuted prior to plan confirmation.

**6.8** **Establishment of the Unsecured Creditor Trust**. On the Effective Date, the SD/DD Unsecured Creditor Trust shall be established. The Debtors and all creditors shall be deemed to have adopted and approved the SD/DD Unsecured Creditor Trust Agreement (the "Trust Agreement"), substantially in the form attached to the Plan. The terms of the Trust Agreement will be subject to approval of all parties to the Mediated Settlement Agreement. *See* Mediated Settlement Agreement ¶15. If the parties to the Mediated Settlement Agreement are unable to agree on the terms of the Trust Agreement, the plan, or any other document in connection with the Mediated Settlement Agreement, there will be further mediation before Judge Isgur. If the parties remain unable to agree, the Bankruptcy Court will determine the terms. *See* Mediated Settlement Agreement ¶ 25.

**6.9** **Purpose of Trust**. The Trust is created pursuant to the Plan for the primary purpose of collecting, and distributing the REP Receipts paid into it by REP.

**6.10** **Governing Document; Effectiveness**. The Trust shall be governed by the Trust Agreement, which shall be filed with the Bankruptcy Court as part of the Plan. On the Effective Date, the Trust Agreement shall become effective, and, if not previously signed, the Trustee shall execute the Trust Agreement. If there is any inconsistency or conflict in terms between the Trust Agreement and the Mediated Settlement Agreement, the terms of the Plan, which includes the Trust Agreement, the terms of the Mediated Settlement Agreement shall control.

**6.11** **Deposit of the REP Receipts to the Trust**. On the Effective Date, pursuant to the Plan and §§ 1123, 1141 and 1146(a) of the Code, title in the Trust Assets will vest in the Dernick Entities, and the Dernick Entities, as settlors of the Trust, shall immediately and contemporaneously transfer title to the Trust Assets to the Trust any then existing Trust Assets to the Trust. The Debtors, their Estates and the Dernick Entities are authorized and directed to deliver the Trust Assets, as defined herein, to the Trustee free and clear of all Liens, Claims, encumbrances or interests of any kind in such property of any other or holders of Claims against the Debtors or the Dernick Entities, except as otherwise expressly provided for in the Plan. The Trust will be treated as a grantor trust subject to the provisions of Section 671 of the Internal Revenue Code of 1986, as amended (the "**Internal Revenue Code**") for United States federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Dernick Entities, as settlors of the Trust, will be treated as the grantors pursuant to Treasury Regulation §1.677(a)-1(b)(2)(i) and (d), and they shall be deemed owners of the Trust Assets for federal income tax

purposes under Section 677 of the Internal Revenue Code.  All income, deductions and credits arising from the Trust Assets shall be included in computing the taxable income of the Dernick Entities under Internal Revenue Code Section 671, and the Dernick Entities shall be responsible for payment of any income tax thereon..

**6.12**   **Beneficiaries**. The Beneficiaries of the Trust are holders of Allowed Claims in Plan Class 3. The holders of Class 3 Claims shall receive an allocation of Beneficial Interests (as defined in the Trust Agreement). Only holders of Allowed Claims in Class 3 will receive Beneficial Interests.

### 6.13   Provisions Regarding Distributions and Objections to Claims

**a.**   **No Distribution Pending Allowance or Estimation of Claims**. No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim, as determined by Final Order.

**b.**   **Objections to Claims**. The Trustee, and any party authorized by the Bankruptcy Code may object to the allowance of prepetition Claims at any time prior to sixty (60) days after the Effective Date or, as to Claims based upon the rejection pursuant to this Plan of an executory contract or unexpired lease, at any time prior to thirty (30) days after the filing of any such rejection Claim. Any proof of Claim filed after the Bankruptcy Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

**c.**   **Suspension of Payments on Disputed and Contested Claims**. If any Claim in Class 3 has been objected to within the time required or is otherwise a Contested Claim, the Trustee shall segregate and set aside, from the funds on hand for distribution to the claimant's class, funds sufficient to satisfy the payment otherwise due on the Contested Claim according to the provisions of the Plan and the Trust Agreement. In the event that the claim objection is overruled or a dispute is resolved by Final Order favorably to the party asserting the Contested Claim such that the Contested Claim, or any part of it, becomes an Allowed Claim, then the funds reserved on account of the Allowed amount of the Claim shall be paid to the creditor in accordance with applicable class provisions. In the event that the Contested Claim or any part of it is disallowed by Final Order, the funds segregated in deference to the Contested Claim shall be placed in the general reserves to be held by the Trust to be distributed to holders of Allowed Claims in Class 3.

### 6.14   Executory Contracts

**General Rejection of Executory Contracts and Leases**. Other than the leases and contracts assumed by Final Order, all executory contracts and unexpired leases which have not been previously assumed or are not on the list of assumed contracts, if any, filed with the Bankruptcy Court within 14 days after the Effective Date are rejected.

### 6.15   Default

No default in the performance of this Plan shall automatically result in the termination of the

Plan or constitute a revocation of the Order Confirming the Plan. In the event that any party in interest believes that the Debtors are in default of any requirement of this Plan, such party or its attorney shall provide written notice of such claimed default to the Debtors and their counsel prior to filing a motion with the Bankruptcy Court regarding the alleged noncompliance with the terms of the Plan, or to otherwise seek Bankruptcy Court enforcement of the terms of this Plan.

Any Defaults under future payment to Wells Fargo and BB&T shall be governed by the prepetition contract entered into by the Debtors with these creditors.

### 6.16    Tax Matters

The Dernick Entities, as settlors of the Trust, will be treated as the grantors pursuant to Treasury Regulation §1.677(a)-1(b)(2)(i) and (d), and they shall be deemed owners of the Trust Assets for federal income tax purposes under Section 677 of the Internal Revenue Code.  All income, deductions and credits arising from the Trust Assets shall be included in computing the taxable income of the Dernick Entities under Internal Revenue Code Section 671, and the Dernick Entities shall be responsible for the calculation, reporting and payment of any income tax thereon. The Trustee shall not be involved whatsoever in the preparation of the Dernick Entities tax filings and tax payments except as provided in the Mediated Settlement Agreement.  Notwithstanding any other provision of the Plan, except as provided in the Trust Agreement and Mediated Settlement Agreement, each holder of an Allowed Claim that has received a distribution under the Plan has sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation on account of such distribution. The tax consequences of the Plan are in many cases uncertain and may vary depending on a Creditor's particular circumstances. Accordingly, Creditors are strongly urged to consult their tax advisors about the United States federal, state and local and applicable foreign income and other tax consequences of the Plan, including with respect to tax reporting and record keeping requirements. For avoidance of doubt, the actual holder of the REP Interests is responsible for, and the Trust's receipt of the REP Receipts shall not relieve the actual holder of the REP Interests from, taxes payable on account of such REP Receipt unless and until the Trust becomes the actual holder of any REP Interests.

## RESERVATION OF CLAIMS

### 7.1    Reservation of Claims and Causes of Action

Except as released herein or in the Mediated Settlement Agreement, any and all claims, causes of action, cross claims, or counterclaims held or assertable by the Debtors or their estates, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) the Avoidance Actions; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtors have or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and

regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained. It is the intent of the Debtors that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's schedules. .

### 7.2    Return of Fraudulent Transfers

Except as released herein or in the Mediated Settlement Agreement, any creditor determined to have received a transfer that is voidable pursuant to Sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Debtors the determined amount of the avoided transfer prior to receiving any distribution.

## EFFECT OF CONFIRMATION, DISCHARGE, RELEASES AND INJUNCTION

### 8.1    Vesting of Property

On the Effective Date of the Plan, all Estate Property shall vest in the respective Debtor pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all claims and interests except as otherwise provided in this Plan. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

### 8.2    Plan Creates New Obligations

Except as otherwise provided in the Plan, (1) the payment terms promised in the Plan constitute new contractual obligations that replace any payment terms that existed prior to the Effective Date, and (2) all rights and obligations other than those new payment terms continue to apply.

### 8.3    Legal Binding Effect

The provisions of this Plan shall: (i) bind all holders of Claims and interests, whether or not they accept this Plan; and (ii) bind the Debtors, and all parties to the Mediated Settlement Agreement.

### 8.4    Discharge and Release

On the Effective Date, the Debtors will be discharged pursuant to Section 1142 of the Bankruptcy Code, subject to the terms of this Plan and the Mediated Settlement Agreement.

Each of the Dernick Entities releases each of the Creditor Entities from all claims or causes of action arising from the beginning of the Universe through November 25, 2019. *See* Mediated Settlement Agreement ¶ 22.

27

Each of the Creditor Entities releases each of the Dernick Entities from all claims or causes of action arising from the beginning of the Universe through November 25, 2019.  Any and all claims of the Creditor Entities against the Dernick Entities are likewise released on the Effective Date~~are likewise discharged on the Effective Date along with all other claims against the Dernicks~~, *See* Mediated Settlement Agreement ¶ 23.

### 8.5 <u>Satisfaction of Claims and Interests</u>

Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any creditor, including Claims arising prior to the Effective Date.

### 8.6 <u>Temporary Injunction</u>

Except as otherwise expressly provided in, or permitted under this Plan, all creditors and persons who have held, hold, or may hold Claims or interests against the Debtors, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors or any third-party guarantor on account of Claims against the Debtors; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the Debtors arising from a Claim.  This injunction does not apply to Wells Fargo or BB&T.

## MODIFICATION OF THE PLAN

### 9.1 <u>Prior to Confirmation</u>

The Debtors may modify this Plan at any time prior to Confirmation, provided the modification complies with the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code and the Mediated Settlement Agreement. Upon the filing of any such modifications with the Bankruptcy Court, the Plan, as modified, becomes the Plan. The Debtors reserves the right to revoke or withdraw the Plan at any time before the Confirmation Date.

### 9.2 <u>After Confirmation</u>

The Debtors may modify the Plan at any time after Confirmation, upon compliance with Section 1127 of the Bankruptcy Code and as is consistent with the Mediated Settlement Agreement and the Trust Agreement. The Debtors shall provide notice of any such proposed modification to all creditors and other parties in interest in these Chapter 11 proceedings.

## MISCELLANEOUS PROVISIONS

### 10.1 <u>Request for Relief Under Bankruptcy Code § 1129(b)</u>

In the event any Impaired class of Claims shall fail to accept this Plan in accordance with Bankruptcy Code § 1129(a), the Debtors request that the Bankruptcy Court confirm this Plan in accordance with the provisions of Bankruptcy Code § 1129(b).

### 10.2    Headings; Severability; Inconsistency

All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose. If any conflict between the Plan and the Disclosure Statement exists, the provisions of the Plan govern. If any conflict between the Plan and any documents implementing the Plan exist, including the Mediated Settlement Agreement and the Trust Agreement (the "Plan Documents") the provisions of the ~~Mediated Settlement Agreement~~Plan govern.  Otherwise, the Confirmation Order controls the Plan, and the Plan controls the Trust Agreement. ~~(~~

### 10.3    Applicable Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

### 10.4    No Interest

Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty, or late charge is to be Allowed on any Creditor's Claim**.**

### 10.5    Post-Confirmation Actions

After Confirmation, the Debtors and the Trustee may, with the approval of the Bankruptcy Court after notice, and so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan, the Mediated Settlement Agreement, or the Trust Agreement~~the Plan, or the Mediated Settlement Agreement~~.

### 10.6    Payment Dates

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, except as may be provided in negotiable instruments requiring such payments.

### RETENTION OF JURISDICTION

**11.1**    The Bankruptcy Court shall retain jurisdiction over this Bankruptcy Case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law. The Dernick Parties and the Creditor Entities shall submit any dispute among them first to mediation with the Judge Marvin Isgur as provided by the Mediated Settlement

Agreement. Specifically, but not by way of limitation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

        **a.**     to consider and effect any modification of this Plan under Section 1127 of the Bankruptcy Code;

        **b.**     to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

        **c.**     to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

        **d.**     to hear and determine all objections to Claims and interests, and to determine the appropriate classification of any Claim or interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

        **e.**     to hear and determine all causes of action;

        **f.**     to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

        **g.**     to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

        **h.**     to approve the reasonableness of any payments made or to be made, within the meaning of Section 1129(a)(4) of the Bankruptcy Code;

        **i.**     to exercise the jurisdiction granted pursuant to Sections 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

        **j.**     to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

        **k.**     Nothing contained herein shall be construed so as to limit the rights of the Debtors to commence or prosecute any claim in any court of competent jurisdiction except as provided in the Mediated Settlement Agreement.~~to determine any and all motions, applications, adversary proceedings and contested matters whether pending in this Bankruptcy Case as of the Effective Date.~~

~~Nothing contained herein shall be construed so as to limit the rights of the Debtors to commence or prosecute any claim in any court of competent jurisdiction except as provided in the Mediated Settlement Agreement.~~

DATED: ~~July 10, 2020~~

**STEPHEN H. DERNICK, INDIVIDUALLY AND AS DEBTOR IN POSSESSION**

By:        Stephen H. Dernick

Signature:  */s/ Stephen H. Dernick*

**DAVID D. DERNICK, INDIVIDUALLY AND AS DEBTOR IN POSSESSION**


By:        David D. Dernick

Signature:  */s/ David D. Dernick*

31

_____

**STEPHEN HARRY DERNICK TRUST**

By:  Stephen H. Dernick, Trustee

Signature: _/s/ Stephen H. Dernick, Trustee_

**DAVID DWIGHT DERNICK TRUST**

By:  David D. Dernick, Trustee

Signature: _/s/ David D. Dernick, Trustee_

32